NETTLES v. FIRST NAT. BANK OF TEMPLE.

No. 9304.

Court of Civil Appeals of Texas. Austin.

Feb. 10, 1943.

Rehearing Denied March 3, 1943.

Sam D. Snodgrass, of Temple, for appellant.

Saulsbury, Skelton, & Everton, of Temple, for appellee.

BLAIR, Justice.

Appellant, E. E. Nettles, sued appellee, First National Bank of Temple, to recover an alleged trust fund of $5,354.93, deposited by appellant with appellee bank on April 17, 1937. The trial court sustained certain special exceptions to the first amended and first supplemental petition and, upon appellant's refusal to amend, dismissed the suit; hence this appeal.

The facts alleged as establishing the trust fund, or out of which the alleged trust agreement or agreements arose, are, in substance, as follows:

That immediately after appellant became the duly elected and acting president of appellee bank, he found that one Downs owed said bank an unsecured debt of about $10,000; and that shortly thereafter Downs died without paying or securing any part of the debt. At the time of his death Downs was indebted (1) to a Dallas bank in the approximate sum of $37,000, which was secured by real estate, stocks and bonds; (2) to a Houston bank in the sum of $12,842.74, which was secured by the stock of a certain life insurance company; and (3) to Rice Institute of Houston in the approximate sum of $32,000, which was secured by a first deed of trust lien on lots 18 and 19, and the west 40 feet of lot 20, in block 21, of the original town of the City of Temple, Texas; and that the Dallas bank also had a second lien on this real estate to secure its indebtedness. That appellant obtained a list of the Dallas bank's securities, and after investigation concluded that the value thereof was greatly in excess of Downs's indebtedness to said bank; that the will of Downs was duly probated, and thereafter appellee made a deal with the executors of his estate by which appellant could acquire all of the assets of said estate, in consideration of the cancellation of the indebtedness due said three creditors, and the approximately $10,000 due appellee bank by Downs. That shortly thereafter appellant, for himself and for his own benefit, obtained from the Dallas bank an option to purchase Downs's notes and collateral held by it for a consideration of $20,000; that he called a meeting of the board of directors of appellee bank, which met at the residence of one of them, at which appellant informed them of all the aforementioned debts, options, collateral securities, and liens, and told the directors that in his opinion the securities held by the Dallas bank far exceeded in value the indebtedness due by Downs to it, to say nothing of the value of the Temple property, which also far exceeded in value the indebtedness due Rice Institute, which held the first lien on the property; and that the value of the collaterals and liens held by said three mentioned creditors of Downs was far in excess of all indebtedness owed by Downs, including the $10,000 due appellee bank. That appellant informed the directors that a deal could be made with the executors of Downs estate whereby appellee bank could acquire all of the assets of said estate so held by the creditors named, in consideration of the cancellation of all the debts due said creditors, including appellee bank. Appellant then and there offered to transfer and assign to appellee bank his option to purchase the Dallas bank's notes, securities and liens, upon condition that appellee bank would exercise it and purchase same, and would then proceed to realize thereon by enforcing the liens; which offer appellee bank declined to accept, unless appellant could sell lots Nos. 18 and 19 for enough to pay off the first lien debt due Rice Institute, and thereby leave appellee bank vested with title to the west 40 feet of lot 20, free of debt. That appellant and one Saulsbury accepted appellee bank's offer, and agreed to purchase lots 18 and 19 for enough to pay the Rice Institute debt, and thereby pay off and discharge its first lien on all of the Temple property. Appellant did then authorize appellee bank to exercise his option to purchase "said notes and securities" for his benefit and with the agree-

ment that appellee bank would foreclose the second deed of trust lien on the Temple property, subject to the Rice Institute's debt and lien; all of which was done; the trustee conveying the property to appellee bank, subject to the first lien, paying therefor $7,500, which was credited on said notes, but with the agreement that it would hold title thereto in trust for appellant and Saulsbury, with the further understanding that in the end they would pay the Rice Institute debt and thereby clear the Temple property of all incumbrances. By paragraph 6 of the first amended original petition, to which all special exceptions sustained by the court were directed, appellant alleged:

"That pursuant to the agreement hereinbefore alleged, and from the day and date of its purchase of said lots 18 and 19, and the west 40 feet of said lot 20, all in block 21, Original Town of the City of Temple, Texas, at said foreclosure sale, and until an undivided interest in and to said lots 18 and 19 was sold to Dr. A. C. Scott, Sr., as hereinafter alleged, defendant held the title to said lots 18 and 19 in trust for said Walker Saulsbury and plaintiff in share and share alike; that on or about April 17, 1937, for and in consideration of $21,000.00 cash paid to defendant, as hereinafter alleged, plaintiff sold his one-half interest in said lots 18 and 19 to said Dr. A. C. Scott, Sr.; that the paper title being as it was in defendant, and for the purpose of vesting the full title thereto in said Dr. A. C. Scott, Sr., and said Walker Saulsbury in share and share alike, defendant did, on or about April 17, A. D. 1937, by its special warranty deed in writing of that date, convey said lots 18 and 19 to said Dr. A. C. Scott, Sr., and Walker Saulsbury; that in consideration for said conveyance, the said Scott and Saulsbury did each pay unto defendant the amount of $21,000.00; that, at the time of such conveyance, said Rice Institute debt, secured as it was by said lots 18 and 19 and the west 40 feet of said lot 20, amounted to the sum of $31,290.14, and out of said sum of $42,000.00 so paid defendant by said Scott and Saulsbury, defendant discharged said Rice Institute debt, and said defendant retained the surplus or excess of $10,709.86, which belonged to said Saulsbury and plaintiff in share and share alike, by virtue of said trust agreement; that thereafter defendant repaid one-half of such last named amount to said Walker Saulsbury, and by agreement made and entered into by and between plaintiff and

defendant, at the time said $42,000.00 was so paid to defendant by said Scott and Saulsbury, said defendant held and retained one-half of such surplus or the sum of $5,354.93, in trust for and as the property of plaintiff; that plaintiff made no demand on defendant for such trust funds until after his connection with defendant had been severed, and during all the time plaintiff remained with said defendant, as hereinbefore alleged, said defendant, through its Board of Directors, recognized that it held said $5,354.93 in trust for plaintiff, and at no time prior to plaintiff's said severance of connection or at any time subsequent thereto, in so far as plaintiff knows, did defendant, through its Board of Directors or otherwise, repudiate said trust agreement; that, however, on or about the 15th day of July, A. D. 1939, plaintiff did make demand of defendant for such trust funds, and defendant failed and refused to pay same, or any part thereof and still refuses and fails to repay said funds or any part thereof."

And by first supplemental petition, in reply to appellee bank's answer, appellant alleged: " * * * and on, to-wit: about April 17th, 1937, said defendant, acting through its Board of Directors at a meeting of said Board held at defendant's place of business, in Temple, Bell County, Texas, agreed with plaintiff that said defendant would hold one-half of the excess or surplus, over and above the amount necessary to pay said Rice Institute debt, said surplus amounting to the sum of $5,354.-93, in trust for and as the property of this plaintiff, and said sum and amount was so left with defendant and retained by it, with the express agreement and understanding that said defendant would hold and retain said money in trust for and as the property of plaintiff, just as it had held a one-half interest in said lots, 18 and 19, in trust for plaintiff."

All special exceptions sustained by the trial court were addressed to paragraph 6, above quoted, of the first amended original petition, and to the above quoted portion of the first supplemental petition, and in substance are as follows:

1. That the pleadings show only an unenforcible oral agreement or agreements as the basis of the trust sought to be impressed on the $5,354.93 deposited with appellee bank, because no record or minutes of the board of directors of appellee bank authorizing it to acquire and hold title to lots 18 and 19 in trust for appellant, or to deposit the $5,354.93 surplus

from the sale of said lots in trust for appellant, were alleged.

2. That the oral agreement or agreements whereby appellant sought to impress a trust upon the real estate and the proceeds of the sale thereof were void as being in violation of the statute of frauds and the statute of conveyances. Arts. 3995 and 1288, R.S.1925.

3. That the pleadings failed to show a valid trust agreement as to the $5354.93 deposited with appellee bank, because it was nowhere alleged that appellant paid or became legally bound to pay any part of the purchase price of lots 18 and 19 prior to the time they were acquired and subsequently sold to a third party by appellee bank.

4. That because it appeared from the pleadings that the $5,354.93 so deposited with appellee bank became merged with its funds, and as to which no separation of the legal and equitable title could be made; and in consequence no valid trust agreement was alleged.

5. That a written instrument of release in favor of appellee bank, signed by appellant as a director of said bank and attached to its answer, also bound him individually and released the cause of action here asserted by him.

We are of the view that the facts alleged show two related express agreements whereby the $5,354.93 deposited with appellee bank became impressed with a trust in favor of appellant: (1) the agreement to the effect that in order that appellee bank might ultimately collect its debt against Downs and his estate, it would under the arrangement made purchase lots 18 and 19 and the west 40 feet of 20 at the trustee's sale, and would take and hold title to lots 18 and 19 in trust for appellant and Saulsbury until same were purchased or sold by them for enough to pay off the debt and lien due Rice Institute, which they agreed to in the end pay off and discharge; and (2) the agreement made at the conclusion of the sale of the property to Saulsbury and Scott that one-half of the surplus, or $5,354.93, would be deposited with appellee bank in trust for appellant just as lots 18 and 19 had been held in trust for him.

Proof of these related agreements was necessary in order to impress the $5,354.-93 deposited with appellee bank with a trust in favor of appellant, and to show his title to or ownership of such trust fund. Such agreements were not, however, required to be in writing; and the court erred in sustaining the special exceptions to the pleadings that they were so, or that they were in violation of the statutes of fraud and the statute of conveyances. The court also erred in sustaining the special exception to the effect that the agreements alleged were not based upon any consideration paid prior to the time appellee bank acquired title to the real estate at the trustee's sale.

The agreements involved more than the mere acquiring of title by appellee bank to lots 18 and 19 with the understanding that same were to be held in trust for appellant and Saulsbury. By the agreements and related transactions in connection therewith appellee bank acquired the valuable option held by appellant individually, and secured through him the assets of the estate of Downs, whereby it was enabled to collect the large unsecured debt due it by Downs or his estate; and whereby it acquired title not only to lots 18 and 19 in trust, but also acquired title to the west 40 feet of lot 20 free of debt. These agreements were made prior to the time appellee bank purchased this property at the trustee's sale, and whereby it expressly purchased the property subject to the outstanding debt and lien thereon in favor of Rice Institute, which debt and lien appellant and Saulsbury had theretofore agreed and obligated themselves to pay off and discharge in consideration of appellee bank's taking and holding title to lots 18 and 19 in trust for them, thereby leaving appellee bank vested with title to the west 40 feet of lot 20 free of debt and lien; and all of which agreements were fully carried out.

That such a trust in land may be created by an express oral contract or agreement has been settled since the earliest decisions in this state. James v. Fulcrod, 5 Tex. 512, 55 Am.Dec. 743; Mead v. Randolph, 8 Tex. 191; Leakey v. Gunter, 25 Tex. 400; Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Johnson v. Smith, 115 Tex. 193, 280 S.W. 158. And neither the statutes of fraud nor the statute of conveyances present any obstacle to the making of such an oral contract, nor to proof by parol evidence of a trust affecting real estate conveyed with express agreement that it shall be held in trust, because such agreement does not affect or divest any title then held by the purchaser. Such a trust constitutes an exception to the parol evidence rule, because for the alleged

trustee to deny that the property was received in trust is itself a species of fraud; and because of the rule that where the instrument or deed of conveyance on its face is complete, but is a part only of the whole transaction, it may be proved for what it contains; but the part not contained may also be proved. Faville v. Robinson, 111 Tex. 48, 227 S.W. 938; Reeves v. Bass, 39 Tex. 618; Gardner v. Randell, 70 Tex. 453, 7 S.W. 781; Johnson v. Smith, 115 Tex. 193, 280 S.W. 158; Redwine v. Coleman, 71 S.W.2d 921, error refused.

■ It is true that a resulting trust in land may not be created unless the payment of the money to purchaser is made prior to or concurrently with the acquisition of the property; but this rule does not apply to an express trust, where prior to or concurrently with the acquisition of title another or others have obligated themselves to pay a part of the consideration for an interest in the land, which is later paid after title has been taken in the name of the alleged trustee. The mere fact that the obligation to pay was not performed prior to the acquisition of title, but performed within the time stipulated, will not defeat the equitable right of the one who has so performed his contract to participate in the purchase. Gardner v. Rundell or Randall, 70 Tex. 453, 7 S.W. 781; Emery v. Emery, Tex.Civ.App., 75 S.W.2d 725. In the instant case all agreements were made prior to the time appellee bank purchased the property at trustee's sale, which included the agreement that appellee bank would exercise the valuable option of appellant to purchase the Dallas bank's notes and liens against Downs, the securing by appellant for appellee bank of all the assets of the Downs estate, and the agreement of appellant and Saulsbury to purchase or sell, or to in the end pay the debt and discharge the lien held by Rice Institute against the land which appellant agreed to purchase later; and to thereafter hold lots 18 and 19 in trust for appellant and Saulsbury, leaving appellee bank vested with title to the west 40 feet of lot 20 free of debt; and all of which transactions and agreements were made and carried out for the purpose of enabling appellee bank to ultimately collect the large unsecured debt due it by Downs or his estate.

The facts of these related agreements and the later related agreement made at the time the surplus of $5,354.93 was deposited with appellee bank in trust for appellant just as the lots were held, are required to be proved as related agreements showing such fund to be impressed with a trust in favor of appellant.

■ The court also erred in sustaining the special exceptions to the effect that no valid trust agreement was alleged as to the $5,354.93 deposited with appellee bank, because such fund became merged with the bank's funds, and as to which no separation of the legal and the equitable title could be made. Appellee bank could not avoid liability by commingling the trust funds with its own; and in any event the burden is upon it to separate and distinguish that which is its own. Chanowsky v. Friedman, Tex.Civ.App., 108 S.W.2d 752, error dismissed.

■ As a pre-trial matter on the pleadings the court sustained special exceptions to the effect that the cause of action asserted by appellant had been released by the written instrument attached to and made a part of appellee bank's answer, which appellant by his reply pleadings admitted signing as a director of appellee bank, the court holding that it also bound appellant individually, and accordingly dismissed his suit. The court correctly held the written instrument to be a release and that it bound appellant individually; but erred in dismissing the suit, because appellant also filed a sworn plea of want of consideration for the release and thereby raised an issue of fact, which was the only issue left to be tried, because the written instrument, as a part of the pleadings of appellee bank, admitted every material fact essential to the establishment of appellant's asserted cause of action.

The written instrument is in form a resolution of appellee bank, executed and acknowledged by its vice-president and secretary, and signed by all of its directors, including appellant. Its recited purposes were to fully record the facts and to ratify, approve, and confirm all agreements and transactions connected with the collection of the debt due it by Downs or his estate, which facts, agreements, and transactions were in substance and effect the same as were alleged by appellant as the basis of his cause of action. After reciting the history of all transactions, including the agreement to purchase the Temple property and hold lots 18 and 19 in trust, the instrument recited that:

"It was unanimously proposed by vote of the Directors to Saulsbury that he pay off said Rice debt in consideration of acquir-

<br />

ing title to said lots 18 and 19 free of all encumbrances, and so that the Bank would thereby acquire said west 40 feet of lot 20 likewise clear of all encumbrances.

"Said Saulsbury accepted said proposition.

"Said Directors then authorized said Nettles to exercise the option and purchase from said Dallas Bank its said notes against the P. L. Downs Estate."

"Thereafter said Saulsbury invited said Nettles to join with him in the deal on a fifty-fifty basis, and Nettles accepted.

"Thereafter the First National Bank of Temple, pursuant to the arrangement and the deal and upon vote of the Directors, acquired the notes and collateral from the First National Bank of Houston, which were valid claims against said Downs Estate.

"Pursuant to the arrangement with Saulsbury, said First National Bank of Temple, through its attorneys Cox & Brown, foreclosed its second lien upon said lots 18 and 19 and said west 40 feet of lot No. 20, subject to the Rice Institute first lien indebtedness.

"First National Bank of Temple purchased said property at said foreclosure and thereafter held the west 40 feet of said lot 20 as its own, and said lots 18 and 19 in trust for said Saulsbury and Nettles.

"Thereafter a fire occurred in the improvements on said lots 18 and 19 and Saulsbury and Nettles collected from the Insurance Company approximately $4,000.-00, and out of such proceeds the improvements were restored, leaving a balance of $1804.00, which was ordered by the Board of Directors of the Bank to be equally divided between said Saulsbury & Nettles, which was done.

"Thereafter said Nettles, having received various benefits from the Bank by way of a bonus, relinquished unto the Bank, with Saulsbury's consent, any interest he might have in said lots 18 and 19.

"Thereafter the Bank negotiated with Dr. A. C. Scott, Sr., for the sale of its one-half interest in said lots 18 and 19 thus acquired from said Nettles, and finally consummated a deal with said Dr. Scott on the basis of $21,000.00 cash for its said half interest.

"The Bank conveyed said lots 18 and 19 to said Dr. Scott, Sr. and said Walker Saulsbury for a recited consideration of $42,000.00, payable in the assumption by them of said Rice Institute debt and the balance in cash to the Bank, the deed being so drawn for the convenience of said parties at interest.

"Said Scott and Saulsbury each paid in cash to the Bank the sum of $21,000.00, or a total of $42,000.00, with which the Bank, for them, discharged the Rice debt so assumed by them in said deed, in accordance with said Saulsbury's deal, and said Bank collected and retained the surplus or excess of $10,709.86, one-half of which belonged to the said Saulsbury in virtue of said trust agreement.

"Thereafter said one-half of said amount of $10,709.86, being the amount of $5,354.93, was repaid by said Bank to said Saulsbury."

The written instrument further recited:

"Therefore, Be It Resolved by the Board of Directors of First Natoinal Bank of Temple:

"1. That the above and foregoing recitation of the facts be and is hereby ratified and confirmed as a statement of the facts;

"2. That said deal, having been profitable and satisfactorily consummated in accordance with said agreements, and said adjustments having been made in accordance therewith, all pursuant to the best interest and to the best advantage of said Bank, the same is in all respects ratified and confirmed;

"3. That the execution and delivery of the several deeds and contracts pursuant to the resolutions thereunto annexed authorizing their execution and delivery, and also all acts of the officers and directors of this bank heretofore done, as hereinabove outlined, be and the same are hereby in all respects and things approved, ratified and confirmed."

The instrument further recited that:

"We, the undersigned Directors of First National Bank of Temple, having read the above and foregoing statement and said resolution, do subscribe our names hereto in evidence of our approval, ratification and confirmation of all and each of the matters appearing in said statement and resolution.

"Witness our hand on this the 22nd day of June, A. D. 1937."

Under this statement the instrument was signed by all the directors of appellee bank, including appellant, whose name appears first on the list.

■ Manifestly, this written instrument expressly admitted appellant's trust interest in lots 18 and 19 and in the surplus of $5,354.93 derived from the sale thereof and deposited with appellee bank as stipulated, unless appellant by such written instrument also released his interest or claim in the trust fund for a valuable consideration. He plead under oath that as to him individually it was void for want of consideration. The issue of want of consideration for the release was therefore the only issue left in the case, because having signed the written instrument as a director of appellee bank, with the recitation therein that in consideration of a bonus received by him from appellee bank, he relinquished his interest in lots 18 and 19, he was estopped individually to thereafter assert his individual claim or interest, if a valuable consideration had been paid him therefor. See Surtess v. Hobson, Tex. Com.App., 13 S.W.2d 345, wherein it is held that one who executed a lease as guardian for his minor children was estopped by the instrument to set up an individual claim to an interest in the royalties paid under the lease. Blackman v. Blackman, Tex.Civ.App., 128 S.W.2d 433, error dismissed—correct judgment.

The judgment of the trial court is reversed, the cause reinstated, and remanded for trial in accordance with this opinion.

Reversed and remanded.