Lucy J. WEBB et al., Appellants,

v.

BRITISH AMERICAN OIL PRODUCING COMPANY et al., Appellees.

No. 3152.

Court of Civil Appeals of Texas.

Eastland.

July 8, 1955.

Rehearing Denied Sept. 16, 1955.

Joel R. Bond, Dallas, Wynne & Wynne, Wills Point, Richard B. Shults, Dallas, Carl Webb, Post, for appellant.

Wheat & Newton, Seymour, Bullington, Humphrey, Humphrey & Fillmore, Wichita Falls, Weeks & Hankerson, Tyler, Otis Nelson, Wichita Falls, James R. Lewis, Tyler, Mayo E. McKeown and Donald Prentice, Dallas, for appellee.

## COLLINGS, Justice.

This suit was brought by Lucy J. Webb, surviving wife of Sidney Webb, and the children of Sidney Webb, as his heirs, against Claude Cowan, individually and as administrator of the estate of Mrs. J. H. Turbeville, deceased, Leslie Humphreys and the City National Bank of Wichita Falls, Texas, co-executors under the will of J. H. Turbeville, deceased, the British American Oil Producing Company, and other alleged holders and claimants of mineral and oil and gas leasehold interests underlying four sections of land, to-wit: Surveys Nos. 112, 198, 199 and 205, T. & N. O. Ry. Surveys in Baylor County, Texas.

Plaintiffs sought a judgment establishing their title to an undivided 531½/575ths of ½ of the minerals under the four sections, and to remove cloud to their title because of a judgment in cause No. 2529 styled J. H. Turbeville v. J. C. Whaley, in the District Court of Baylor County, Texas. The defendants answered by pleas of not guilty, estoppel, the various statutes of limitation and bona fide purchaser for value. The trial was before a jury which answered all special issues submitted favorably to the defendants and judgment was rendered accordingly. Lucy J. Webb and other plaintiffs have appealed.

Appellants urge numerous points of error as the basis of their appeal. These points are grouped for consideration in the briefs of the parties according to the subject matter involved. We will follow the same procedure.

The pleadings and evidence show that in 1918 Sidney Webb and wife, Lucy J. Webb, were the fee simple owners of the four sections of land, the fractional mineral interest in which is here involved, and also the owners of 13 additional sections. During that year Sidney Webb and wife conveyed the four sections to Robert B. Webb.

On February 2, 1920, Robert B. Webb, by mineral deed, reconveyed to Sidney Webb an undivided ½ interest in the minerals under the four sections which conveyance was duly filed for record in the Deed Records of Baylor County, Texas. Sidney Webb, on the same date, by mineral deed, conveyed to the First National Bank of Fort Worth, Texas, as trustee, an undivided ½ interest in the minerals under the four sections and under his 13 sections. Sidney Webb and eight other parties had previously entered into a trust agreement with the First National Bank of Fort Worth which was designated as trustee, providing for a trust consisting of royalty and mineral interests in and under approximately 115,000 acres of land in Baylor County and other Texas Counties. By the terms of the trust the title to the property was to be held for the benefit of the grantors and other persons, firms, etc., who might become beneficially interested. It was provided in the trust agreement that the property was to be divided into 575 equal parts or units, each unit representing that undivided part of the entire trust property, and the trustee was to disburse the net revenue therefrom to the owners of such units at stated intervals; that the grantor, Sidney Webb, was to be paid $111,000 in the event such minerals were sold but that if at the end of 18 months less than 65% of the total amount had been sold that the right to sell such units under the trust agreement should terminate; that upon the termination of the trusteeship each grantor was to receive a deed to the unsold mineral interest or portion which had been conveyed by him to the trustee.

On October 1, 1921, Robert B. Webb, by warranty deed, conveyed the four sections of land to J. H. Turbeville and wife, Allie Turbeville, Claude C. Cowan and Sam Cowan. The recited consideration was $7,500 cash, the execution of ten vendor's lien notes in the sum of $1,618 each and the assumption of $30,000 indebtedness to the Texas Land and Mortgage Company, se-

cured by a deed of trust on the land. The deed, with provision for general warranty of title, purported to convey fee simple title to the four sections of land and contained no reservation of any mineral interest. On the same day Sidney Webb and wife, by general warranty deed, reciting a consideration of $84,312.90 of which $7,500 was in cash and the balance in secured indebtedness, conveyed their 13 sections of land in Baylor County to the same grantees.

The evidence further shows that at the time of the execution and delivery by Sidney Webb and wife and Robert B. Webb of the above described warranty deeds to the Turbevilles and Cowans, the First National Bank of Fort Worth, as trustee, had, under the provisions of the trust agreement, disposed of 44 of the 575 units of the ½ mineral interest in the land and still retained as trustee 531 units; that the Bank, in accordance with the trust agreement, did thereafter, by two instruments, one dated October 5, 1922 which purported to cover only a royalty interest, and the second dated October 28, 1922, which purported to cover a mineral interest, release and re-convey such 531 units in ½ the minerals in and under the land to Sidney Webb.

Appellants' claim of title to the mineral interest in question is based upon the undisputed facts that Robert B. Webb's conveyance of his undivided ½ mineral interest under the four sections to Sidney Webb was executed, delivered and duly placed of record prior to his warranty deed to Turbeville; that Sidney Webb conveyed such mineral interest to the Bank as trustee and the Bank, by its release or conveyance dated October 28, 1922, re-conveyed such mineral interest to Sidney Webb except the ⁴⁴⁄₅₇₅ths interest therein which it had disposed of under the trust agreement, and that Mrs. Lucy J. Webb, as the sole devisee under Sidney Webb's will, is now the owner of such mineral interest. The above facts are admitted but appellees urge other facts found by the jury in support of the judgment.

The jury found that Sidney Webb executed and delivered a release or conveyance to J. H. Turbeville of the fractional mineral interest in controversy, sending it by mail to Turbeville's attorney, W. E. Forgy; that the instrument was lost and could not be found, although diligent search was made therefor. Appellants contend that there is no evidence to support such finding. In our opinion there was ample evidence to support the finding.

Soon after the execution and delivery of the warranty deeds by Sidney Webb and wife and Robert B. Webb to Turbeville, et al., the grantees therein began to make oil and gas leases covering portions of the land in controversy. On October 29, 1921, T. M. Ragsdale, by letter to Sidney Webb, inquired about the possibility of securing an oil and gas lease on Webb's "Baylor County Ranch" with the stated purpose of drilling thereon. The evidence indicates that the letter was sent by Sidney Webb to Turbeville with this added postscript in his own handwriting:

"John, I thought you might want to take up with these parties about drilling a well on the land I sold you.

Yours truly,
Sidney Webb."

W. E. Forgy, an attorney who represented Turbeville, is deceased. The following letter, dated June 11, 1922, was found among Forgy's files and the signature was identified to be that of Sidney Webb:

"W. E. Forgy, Esq.

"Archer City

"Dear Judge:

"I have just received the letter about the royalty that was transferred to the 1st National Bank—Fort Worth and will say that they are only Trustees under a contract for the other parties to do certain things which they failed to do and the contract has expired. . . This royalty is to be transferred back by the Bank. I talked to Mr. Yarborough who is handling it. He said he was ready to transfer it back, but

asked me to wait a short time as he wanted to passify some parties who had bought units but any time it was needed he would transfer it back. I don't know who you talked to but Mr. Yarborough knows all about it. I had a letter from Mr. Turbeville saying he was going down there. He can take this letter and see Mr. Yarborough. You will find it just like I have stated. They have got to pay about $100,000.00 or transfer back the royalty. You don't have to take the money if you don't want it, as the contract has expired— and this is just as I explained to Mr. Turbeville when he *taken* the land.

"Yours truly,

"/s/ Sidney Webb."

The evidence shows a letter by J. H. Turbeville to the First National Bank of Fort Worth dated October 28, 1922, claiming ownership of all of the minerals in and under the land except the 4⅘₇₅ths interest which the Bank, as trustee, had disposed of. On the same date the Bank executed a release or conveyance of such mineral interest back to Sidney Webb.

The following letter was found among the papers of J. H. Turbeville and the purported signature of Sidney Webb was identified as authentic:

"Mineral Wells, Texas, 9/9/23

"W. E. Forgy, Esq.

"Archer City

"Dear Sir:

"Enclosed find the release for the royalty on the land sold Mr. Turbeville. This release has been executed a long time and was just now located. Have this placed on record.

"Yours truly,

"/s/ Sidney Webb."

"P.S. by Forgy:

"My dear John:

"Just received this from Mr. Webb, this is the instrument I wrote while in Ft. Worth last year.

"Yours truly,

"/s/ W. E. Forgy."

■ The evidence further shows that Turbeville brought suit against Sidney Webb and Robert B. Webb for damages for breach of the warranty contained in the two deeds by which the Baylor County lands were conveyed. The defendants in such suit, before trial, filed a cross action for the amount of the principal and interest upon their vendor's lien notes, and for foreclosure of their lien. The case was filed in Baylor County and transferred to Palo Pinto County on plea of privilege. It was numbered Cause No. 7354 on the docket of the District Court in Palo Pinto County. The pleadings and transcript of the testimony in that case were introduced in evidence over appellants' objections and the point is presented on this appeal. The suit was between the Turbevilles and Cowans as plaintiffs and Sidney Webb and Robert B. Webb as defendants. The same parties, or those claiming under and through them, are parties to this suit. The question of whether the minerals were sold to the Turbevilles was an issue in both that case and in the instant case. The parties were present and represented by counsel at the trial in Cause No. 7354 and had ample opportunity to reply to pleadings and to cross examine witnesses on the issues presented. The record is properly authenticated and in our opinion is admissible in evidence on this trial. 3 Jones on Evidence 2154; McCormick and Ray 581; Thurmond v. Trammell, 28 Tex. 371; 17 Tex. Jur. 658. It is also noted that in appellants' pleadings herein it was contended that the position of the Turbeville parties in Cause No. 7354 was inconsistent with appellees' position in this case. Appellees were entitled to show by the record that there was no such inconsistency.

In the petition of the Turbeville parties in Cause No. 7354, it was alleged that they were to receive $102,000 for the ½ mineral interest which was outstanding at the time they received the deeds to the property or that said mineral interest should be released and conveyed to them; that no part of the $102,000 had been paid. The petition contained the further allegation that:

"These plaintiffs further aver that the said defendants recognizing their aforesaid premises and realizing their obligation to keep and perform same on or about the 1st day of October, A. D., 1923, did secure and deliver to these Plaintiffs a release on about four hundred fifty-three (453) of said units, but that there is yet forty-seven (47) of said units outstanding for which no release has been secured tendered or delivered to these Plaintiffs, and that there is yet a valid subsisting lien on said land by reason thereof which at this time clouds the title to said land and which constitutes a cloud upon the Plaintiffs' title at this time and still renders the same in any such condition that these Plaintiffs cannot sell a lease on any of said land nor the fee title thereto by reason of said cloud on the same."

It appears that after a docket entry of judgment for plaintiff had been entered the suit was settled by the parties and dismissed. The order of dismissal, dated May 3, 1926, contained the following provision:

" * * * it appearing to the Court that the Plaintiffs have been paid the amount recovered by them in said cause and the Vendor's lien upon their lands have been released by the Defendants and that Plaintiffs have paid to the Defendants Sidney Webb and R. B. Webb the principal and interest upon the notes sued on in their cross action and have released Defendants from their warranty of title, all of which was done in pursuance and in compliance with the agreement had between the parties at the time judgment was rendered."

H. M. Muse, one of the attorneys representing the Turbeville parties in the above mentioned suit, testified on the trial of this case. He stated that he was present at the trial and that Mr. Turbeville testified as a witness; that Sidney Webb was present and represented by attorneys. He stated that he discussed the matter with Sidney Webb concerning the outstanding units of mineral interest and that Sidney Webb did not claim to own any of such mineral interest and stated that such mineral interest except the 44 units which had been disposed of and could not be secured, was the property of Mr. Turbeville; that Webb had endeavored to secure these 44 outstanding units for Mr. Turbeville.

In connection with the settlement of the above suit it is shown that the Turbeville parties, on May 10, 1926, executed a release to Sidney Webb and Robert B. Webb releasing them from all liability on their warranty in the deeds by reason of the 44 outstanding units. The release provided, among other things, as follows:

"Whereas there is yet still outstanding 44 of the said 575 units or interest which are now owned by other parties, and have never been released or secured, by the said Sidney Webb or Robert B. Webb for themselves, or their assigns, and by reason thereof they and each of them are liable or have heretofore been liable on their warranty deeds to the said J. H. Turbeville, Mrs. J. H. Turbeville, Sam Cowan and Claude C. Cowan and for the purpose of being relieved, and released, from further liability to said parties on their warranties by reason of the said 44 outstanding mineral units, not secured or released the said Sidney Webb and Robert B. Webb have paid to the said J. H. Turbeville, Mrs. J. H. Turbeville, Sam Cowan and Claude C. Cowan the sum of $5,000.00.

"Now, therefore, know all men by these presents: That we, the said J. H. Turbeville, Mrs. J. H. Turbeville, Sam Cowan and Claude Cowan being now the owners of said land, and the parties to whom said warranty deeds were made, for and in consideration of the sum of $5,000.00 to us in hand paid by the said Sidney Webb and Robert B. Webb do hereby and by these presents release the said Sidney Webb, and Robert B. Webb, their heirs and assigns from any further liability on said warranty deeds to us made by them, in so

far as the said 44 outstanding units are concerned and effect the title to said land, and we hereby accept the said $5,000.00 as full payment and in full satisfaction for the defect and cloud on the title to our said land insofar as the same is effected or clouded by the said 44 outstanding units or interest but as to that reason only.

"And we hereby and by these presents bind ourselves, our heirs and assigns to make no further claim or claims against the said Sidney Webb and Robert B. Webb or their heirs or assigns on the warranties in their said deeds to us insofar as they have been liable on same by reason of the 44 outstanding units or interest, herein mentioned and set forth, and that they are fully discharged by reason of the said 44 outstanding units on their said warranties."

On April 9, 1926, it is shown that the vendor's lien retained in the deed to the Turbeville parties was released and a check in the sum of $57,925.40 was given by the Turbevilles to Sidney Webb as payee. The check shows to have been endorsed by Sidney Webb.

■ The deposition of V. F. Fuson was placed in evidence. He testified that he was an employee of the British American Oil Company in 1938 when that company was concerned about securing an oil and gas lease on the property in question. He testified that by telephone he discussed the matter with Sidney Webb and Webb told him that his differences with the Turbevilles had been settled; that the Bank owned $44/675$ths of the minerals in the land involved and that Turbeville owned the rest. Appellant contends that this telephone conversation was not admissible because no proper predicate was laid; that Fuson was not asked if he knew Webb's voice or about any other facts which would show that Webb was actually the person to whom Fuson was talking. Fuson testified that his only contact with Mr. Webb "at that time" was the telephone conversation; that he did place a telephone call for Sidney Webb,

talked to him; that he inquired how the minerals stood; if his trouble with Turbeville had been settled, and if he thought the Bank could make a lease; that Mr. Webb replied that the Bank owned $44/675$ths and that Turbeville owned the balance and that their differences had been settled. In our opinion, the effect of Fuson's testimony is that he talked to Sidney Webb on the telephone. The subject matter of the conversation, the statements attributed to Sidney Webb and his connection with the facts and circumstances in question tend to reveal his identity and corroborate and support Fuson's statement that Sidney Webb was the man to whom he was talking. National Aid Life Ass'n v. Murphy, Tex.Civ.App., 78 S.W.2d 223, 229 (Writ Dis.); Texas Candy & Nut Co. v. Horton, Tex.Civ.App., 235 S.W.2d 518 (Ref.N.R.E.). Appellants' point complaining of the admissibility of this evidence is overruled.

The evidence further shows that oil was discovered on the four sections of land involved in 1940 by appellee, British American Oil Producing Company, and that six or seven wells have been drilled on the land, mostly in 1941 and 1942; that such wells have been producing oil ever since. Appellee Claude Cowan testified that he was in Mineral Wells after the first well came in as a producing oil well and that he and Sidney Webb discussed the location of the well on the land; he stated that Sidney Webb never made claim to an interest in such minerals.

■ Appellants urge that the admission over their objection of Claude Cowan's testimony about his conversation with Sidney Webb, advising him of the discovery of oil and of Webb's reaction thereto was reversible error; that this suit was brought against Claude Cowan and others as administrators and that the case comes within the purview of the Dead Man Statute. The point is overruled. The title claimed by Cowan is in his own individual capacity and not as an heir. He holds, by reason of deeds conveying the title held by John Turbeville, by Mrs. Turbeville, and the Bank, and Humphreys as executors. Transac-

tions with Sidney Webb were, therefore, not covered by the statute. Art. 3716, Vernon's Texas Civil Statutes; Tennison v. Palmer, Tex.Civ.App., 142 S.W. 948; Pugh v. Turner, 145 Tex. 292, 197 S.W.2d 822, 172 A.L.R. 707. Mrs. Webb's claim of title is in her own right and as a legatee of her deceased husband, Sidney Webb, not as his heir. The evidence is conclusive that other plaintiffs claiming as heirs of Sidney Webb have no valid claim to the land as heirs but are mere nominal parties.

Cowan testified that he claimed and received the full ⅛th royalty from such production and has not shared it with anyone; that no one disputed his claim until this suit was filed. The evidence shows that Turbeville and the Cowans duly and regularly paid all taxes on the property before it became delinquent from 1922 to and including the year 1952, and that neither Sidney Webb nor any of the plaintiffs have ever paid any taxes on the land since the sale to Turbeville in 1921.

■ Proof of a lost deed may be made by circumstantial evidence. Miller v. Fleming, 149 Tex. 368, 233 S.W.2d 571; Smith v. Taylor, Tex.Civ.App., 197 S.W.2d 851 (Ref.N.R.E.); Pewitt v. Renwar Oil Co., Tex.Civ.App., 261 S.W.2d 904; Price v. Humble Oil & Refining Co., Tex.Civ.App., 152 S.W.2d 804.

■ The test of the evidence required to raise a fact issue on the question of the execution and delivery of a deed in such cases is set out in Magee v. Paul, 110 Tex. 470, 221 S.W. 254, 256, as follows:

"* * * the rule is sound which permits the inference that an apparent owner has parted with his title from evidence, first, of a long asserted and open claim, adverse to that of the apparent owner; second, of non claim by the apparent owner; and third, of acquiescence by the apparent owner in the adverse claim. * * *"

The evidence shows that Turbeville and the Cowans openly asserted claim to the mineral interest in controversy adverse to Sidney Webb, Robert B. Webb and adverse to any and everyone else claiming an interest therein at all times since they received their warranty deeds to the land from Sidney Webb and Robert B. Webb in 1921, covering a period of more than 30 years prior to the filing of this suit. They executed numerous oil and gas leases covering all of the mineral interest in the land except the 44 units disposed of under the trust agreement. Oil wells were drilled under these leases; production was secured and the full ⅛th royalty therefrom was claimed and retained by the Turbevilles and Cowans.

The evidence further shows that from the time of such deeds until this suit was filed Lucy J. Webb, Robert B. Webb and Sidney Webb until the time of his death in 1943, made no claim to such fractional mineral interest but on the contrary, acquiesced in appellees' adverse claim. The evidence shows that Sidney Webb acquiesced in the right of the Turbevilles and Cowans to make oil and gas leases covering such mineral interest; that he knew of the oil production therefrom and made no claim thereto.

The release executed by the Turbevilles and the Cowans on May 10, 1926 recited there was "still outstanding 44 of the 575 units" which were outstanding at the time of the execution and delivery of the warranty deeds by Sidney Webb and Robert B. Webb. This recitation plainly infers that the remaining 531 units were not at that time outstanding. The inference is made stranger by the fact that the $5,000 damages received by the Turbevilles and Cowans applied only to the "44 outstanding" units.

The evidence is, in our opinion, sufficient under the holdings in the above cited cases to sustain the jury finding that Sidney Webb made and delivered a deed or release to Turbeville conveying the minerals in controversy. See also Baldwin v. Goldfrank, 88 Tex. 249, 31 S.W. 1064; Harvey v. Humphreys, Tex.Civ.App., 178 S.W.2d 733 (Err. Ref.); 2 Tex.Jur. 26, 27. The evidence also showed that the deed was lost and diligent search was made to locate it.

734

The evidence concerning the action and conduct of Sidney Webb and of the Turbeville parties at all times after the execution and delivery of the two deeds to Turbeville and the Cowans was more consistent with his conveyance to them of the fractional mineral interest in question than consistent with such a conveyance not having been made by him. The evidence contained all the requirements to authorize the presumption of a grant.

■ We are also of the opinion that the evidence supports the claim of title by the Turbeville parties and those claiming under them including British American Oil Producing Company under the ten year statute of limitations. The jury found that such parties have held peaceable and adverse possession of the lands in controversy including the oil, gas and minerals thereunder and have been continuously operating, drilling and producing oil therefrom for a period of more than ten years before this suit was filed. It is true as appellants contend that the minerals in question had been severed from the surface and the remaining ½ of the minerals. Under such circumstances peaceable and adverse possession of the surface and the unsevered portion of the minerals first acquired by the Turbevilles under the deed from Robert B. Webb would not support the running of the statute on the severed minerals.

The evidence shows, however, that the Turbevilles and Cowans claimed ownership of the severed fractional mineral interest from the time they received the warranty deeds in 1921 and that Sidney Webb knew of and acquiesced in such claim from the beginning. It is further shown that British American Oil Producing Company who held oil and gas leases from appellees covering the land did, in 1940, more than ten years before the filing of this suit, drill for and discover oil thereon, and that oil has been produced therefrom continually since that time. Contrary to appellants' contention, Sidney Webb, during his lifetime and Mrs. Webb thereafter, had both actual and constructive notice of the hostile claim by the Turbevilles and Cowans. Sidney Webb was told by Claude Cowan about the first oil well in 1940. He never urged or by any act on his part indicated any claim to an interest therein. The evidence shows that British American Oil Producing Company maintained and operated tank batteries, pumping units and engines, derrick machinery and various other oil well equipment thereon during the statutory period, and that the operation was open and continuous; that while drilling was in progress, the derricks were lighted and visible for many miles. Sidney Webb had actual knowledge of appellees' claim to and appropriation of all of the proceeds from the oil produced on said property. That Mrs. Webb also had actual knowledge of appellees' adverse claim is shown by the fact that Claude Cowan's attorney wrote a letter to Mrs. Webb in 1947 requesting that she and her children execute a quit claim deed to the property. This letter gave notice to Mrs. Webb that Claude Cowan was claiming the entire estate. John Miller, an attorney, residing at Mineral Wells and a son-in-law of Mrs. Webb, answered the letter. Thereafter several letters were exchanged between Miller and Cowan's attorney concerning the matter. The nature of this correspondence was such that Mrs. Webb, through her attorney, could not help but know of appellees' adverse claim.

Appellees' claim of ownership of the mineral interest in controversy was never questioned until the filing of this suit. Appellee, British American Oil Producing Company, drilled wells and discovered oil on the land. Appellees appropriated the proceeds to their own use. Such production of oil on the premises and appropriation of the proceeds under the circumstances in evidence constituted an adverse holding which continued for the statutory period of ten years. Sidney Webb, during his lifetime, and Mrs. Webb thereafter had actual and constructive notice of such adverse claim and holding. Appellees thereby acquired title to the fractional mineral interest under the ten year statute of limitations. Rio Bravo Oil Co. v. Staley Oil Co., 138 Tex. 198, 158 S.W.2d 293; Kilpatrick v. Gulf Production Co., Tex.Civ.App., 139 S.W.2d

653 (Writ Dis. Judgment correct); Moore v. Knight, 127 Tex. 610, 94 S.W.2d 1137; Fulcher v. Carter, Tex.Civ.App., 212 S.W.2d 503; Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352.

Under the undisputed evidence the legal title to ½ of the minerals under the land purported to be conveyed by the warranty deeds of Sidney Webb and Robert B. Webb to the Turbevilles dated October 1, 1921, was in the First National Bank of Fort Worth as trustee. Sidney Webb, at the time of such deeds, had the right to have the Bank re-convey to him any portion of such minerals not sold under the trust agreement prior to January 1, 1922, and for any of such mineral interest that was sold to receive an agreed amount therefor. In connection with and leading up to the purchase of the land by the Turbevilles, appellees alleged and introduced evidence to show that there was a verbal agreement between Sidney Webb and the Turbevilles concerning the ½ mineral interest held in trust by the Bank. The following findings were made by the jury:

In answer to special issue No. 1:

" * * * that an agreement was verbally entered into between Sidney Webb and J. H. Turbeville for the sale of lands described in the two deeds dated October 1, 1921, from the said Grantors above mentioned to the said Grantees above mentioned, and at the time of such agreement, if any, Sidney Webb received as cash payment for the sale of said lands the sum of $15,000.00 from said Grantees through J. H. Turbeville."

In answer to special issue No. 2:

" * * * that the deed given by Robert Webb as Grantor, dated October 1, 1921, was given at the instance and request of Sidney Webb and to carry out such agreement, if any, that Sidney Webb had theretofore made with the Grantees in said deed, who were acting through J. H. Turbeville."

In answer to special issue No. 3:

" * * * that as a part of said agreement for the sale of said lands entered into between Sidney Webb and J. H. Turbeville, the Grantees in said deeds as the purchasers of said lands were to have and receive the mineral estate in and to said lands which Sidney Webb had placed in the First National Bank of Fort Worth, Texas, Trustee, or were to receive the sum of *approximate* $102,000.00."

In answer to special issue No. 4:

" * * * that as a part of said agreement for the sale of said lands and mineral interest, it was agreed at said time that Sidney Webb would secure a release and reconveyance of said mineral estates from the said Bank as Trustee or would receive the sum of approximately $102,000.00 and that he would receive said minerals or said money for the benefit of the purchasers of said lands, being the Grantees in said two deeds above mentioned."

In answer to special issue No. 8:

" * * * that in the payment of the vendor's lien notes which had been given by the grantees in said deeds such payment being in the month of April 1926; such payment was made in complete reliance by those making such payment upon the agreement and recognition on the part of the Defendants in said suit, that the grantees in said deeds held and owned all the mineral interest in said land except $44/675$ of ½ interest."

In answer to special issue No. 8a:

" * * * that the release of the warranty to the Grantors, Sidney Webb and Robert Webb, dated May 10, 1926, made by the Grantees in said deed, J. H. Turbeville, Allie Turbeville, Sam Cowan and Claude Cowan, was made by said Grantees in complete reliance by those executing such releases, to-wit, J. H. Turbeville, Allie Turbeville, Sam

Cowan and Claude Cowan, upon the agreement and recognition, if any, on the part of the said Sidney Webb and Robert Webb that the said Grantees, J. H. Turbeville, et al., hold all of the mineral interest in said lands except 44⁄575 of ½ interest therein."

In answer to special issue 8b:

" * * * that in the execution and delivery of the release dated May 10, 1926, releasing the said Robert Webb and Sidney Webb on their respective warranties that said J. H. Turbeville, Allie Turbeville, Sam M. Cowan and Claude Cowan relied upon the statements contained in said release that there were only 44 units outstanding of said 575 total units."

In answer to special issue No. 8c:

" * * * that the release of May 10, 1926, was executed and delivered pursuant to the statements and representations contained in such release."

In answer to special issue 8d:

" * * * that the respective deeds and transfers to Sidney Webb by the First National Bank of Fort Worth, Texas, Trustee, one dated October 5, 1922, and the other dated October 28, 1922, were procured by the said Sidney Webb with the intention on his part that same be for the use and benefit of the Grantees in the two deeds dated October 1, 1921."

Appellees contend that the court erred in submitting the above special issues to the jury, in entering judgment thereon and in admitting evidence upon which such findings are based. Appellants particularly urge that the evidence tending to show the claimed verbal agreement prior to the purchase and sale of the land was invalid; that such evidence varied and altered the terms of the deeds and in the absence of fraud, accident or mistake, was not admissible.

■ Appellants' points in this connection are not well taken and are overruled.

The facts found by the jury in the above special issues were supported by evidence. The title to the mineral interest in question was in the Bank as trustee for Sidney Webb at the time the Turbevilles purchased the Baylor County land in 1921. The evidence shows that Sidney Webb made an oral agreement with the Turbevilles and Cowans to sell all of the land, including the minerals and received the original payment of $15,000; that under the agreement the Turbevilles and Cowans were to receive the mineral interest held by the Bank as trustee, or the money for any portion that was sold; that Sidney Webb was to secure a release or re-conveyance of such mineral interest from the Bank; that he executed a warranty deed to 13 sections of the land and at his instance and request, his son, Robert B. Webb, gave his warranty deed covering the four sections in controversy which purported to convey fee simple title with no mineral reservations. The existence of an oral contract to sell the minerals was confirmed by Sidney Webb's letter of June 11, 1922 and also by the record of the breach of warranty suit between the parties. As a part of the consideration for the purchase of such land in 1921, the Turbeville parties executed vendor's lien notes and assumed the payment of other indebtedness which was secured by a lien on the land. When the breach of warranty suit against the Webbs was settled in 1926, the payment of the balance due on the vendor's lien notes to Sidney Webb was made by the Turbeville parties in connection with and reliance upon the provisions of the release executed by them indicating that only 44 units of the ½ mineral interest was then outstanding. The Turbeville parties by such release accepted $5,000 from the Webbs in full satisfaction for the outstanding 44 units. The Webbs accepted the release and filed it for record. The general rule is that a grantee in a deed or other instrument who accepts the instrument is bound by the recitals therein even though he does not sign it. Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626; Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599. The evidence shows

that during all of this period the Turbeville parties claimed ownership to the fractional mineral interest and that Sidney Webb knew of and acquiesced in their claim. The Bank, in compliance with the trust agreement did, in 1922, release or reconvey the ½ mineral interest except the 44 outstanding units to Sidney Webb.

■ The circumstances as above outlined under which the reconveyance or release was made by the Bank of the legal title to the mineral interest in controversy to Sidney Webb was such as to impress a constructive trust upon such mineral interest in favor of the Turbevilles and Cowans. They thereby became owners of the equitable title to such mineral interest, and were entitled to prevail against the legal title holder in an action of trespass to try title. Hall v. Miller, Tex.Civ.App., 147 S.W.2d 266 (Err. Dis.); Simmons v. Wilson, Tex.Civ.App., 216 S.W.2d 847; Kirkland v. Handrick, Tex.Civ.App., 173 S.W.2d 735 (Err. Ref.); Magee v. Young, 145 Tex. 485, 198 S.W.2d 833; Mills v. Gray, 147 Tex. 33, 210 S.W.2d 985.

In 26 R.C.L. 1226, it is stated as follows:

"It is a well settled general rule that if one person obtains the legal title to property, not only by fraud, or by violation of confidence or fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

■

■ Such a trust in land may arise out of an oral contract or agreement. Nettles v. First Nat. Bank of Temple, Tex.Civ. App., 168 S.W.2d 920 (Ref. W.M.); Edwards v. Strong, 147 Tex. 155, 213 S.W.2d 979.

■ It is not here material whether the trust was constructive or express because it arose before the effective date of art. 7425b–7, Vernon's Annotated Revised Civil Statutes, under which oral express trusts are not enforceable. Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471. The oral agreement was not invalid because of the Statute of Frauds, the Statute of Conveyances or the Texas Trust Act.

■ The action and conduct of Sidney Webb and Robert B. Webb and of the Turbevilles and Cowans indicates a practical construction by the parties to the effect that the Turbevilles and Cowans were the true owners of the mineral interest in controversy. This was properly considered in determining the intention of the parties. 14 Tex.Jur. 924, 925; Col-Tex Refining Co. v. Coffield & Guthrie, Inc., Tex.Civ.App., 264 S.W.2d 462 (Writ Ref.); Humble Oil & Refining Co. v. Reclamation Co., Tex. Civ.App., 58 S.W.2d 1082 (Writ Ref.)

For the reasons stated we are of the opinion that the trial court properly entered judgment against appellants and in favor of appellees, establishing appellees' title to the mineral interest in controversy. We have examined and considered all points presented and find no reversible error.

The judgment of the trial court is affirmed.