Nathan E. BELL and Robert Williams, Jr., Appellants,

v.

STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION[1] and The State of Texas, Appellees.

No. 01–95–00007–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 29, 1995.

---

1. The State Department of Highways and Public Transportation, formerly known as the State Highway Department, is now known as the Texas Department of Transportation.

Alton V. Williams, J.D., LaMarque, for appellants.

Dan Morales, Jorge Vega, LaQuita A. Hamilton, David A. Talbot, Jr., Rodney D. Parrott, Austin, for appellees.

Before MIRABAL, WILSON and COHEN, JJ.

## OPINION

COHEN, Justice.

Appellants appeal from the denial of their motion for new trial attacking a summary judgment in favor of the appellees, hereafter "the State," declaring title to real property to be in the State. We reverse and remand.

The appellants alleged that on January 21, 1991, they possessed real estate located in Galveston County. On that date, the State "unlawfully entered upon and dispossessed the plaintiffs of this real property," claiming it was a state-owned right-of-way. It is undisputed that in 1894, Albert and Priscilla

Phillips, appellants' predecessors in interest, "granted" Galveston County a 15–foot right-of-way along the property. The Phillips property was used as an undedicated, unplotted cemetery, primarily for Blacks.

In 1926, Galveston County purchased lots for the reinterment of graves located within the future path of either the right-of-way adjacent to United States Highway 75/State Highway 6 or the highway itself.[2] The county paid $300 for the lots. The State contends that the property it seized in 1991 was purchased by the county for use as a right-of-way adjacent to the highway some time after the 1894 "grant." It is undisputed that the State began maintenance of the highway in 1952. It is also undisputed that no deeds exist verifying any transfer of title from the Phillips to the county after 1894.

The appellants sued for a declaratory judgment establishing their title to the property. On June 7, 1994, the State moved for summary judgment on the basis that circumstantial evidence proved it to be the owner by purchase of the property or alternatively that it had been in adverse possession of the property under the 10–year statute of limitations. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.026 (Vernon 1986 and Supp.1995). The appellants responded, asserting that because the State claimed title through circumstantial evidence or adverse possession, a fact issue existed. Appellants presented affidavits stating that the property seized by the State in 1991 was always used as a cemetery; that the graves reinterred soon after the 1926 purchase were "removed from the roadway" itself, rather than from the property seized in 1991; and that King Bell, Nathan Bell's father, could not have sold any additional property to Galveston County because title to the tract was in his wife as her separate property.

A hearing on the motion was scheduled for September 21, 1994. Appellants' attorney failed to appear then, and the State's motion was granted. The appellants moved for a new trial, alleging that counsel's absence was

---

2. U.S. 75/S.H. 6 is now called "S.H. 3" or "old Galveston road." Apparently, the property at issue here is adjacent to this highway.

due to accident or mistake; that fact issues existed; and that granting a new trial would not prejudice the State. The motion was denied.

■ In their first point of error, appellants contend that the trial court erred in denying their motion for new trial. Construing the briefing rules liberally, as we must, we interpret this point of error to be a complaint that summary judgment was improperly granted because a fact issue existed as to ownership of the property.[3] TEX.R.APP.P. 74(p).

Initially, appellants contend that the trial court's judgment is a post-answer default judgment. We disagree.

■ The judgment purports to be a summary judgment, and absent evidence to the contrary, we will presume this is so. *Univ. of Texas v. Hinton*, 822 S.W.2d 197, 202 (Tex.App.—Austin 1991, no writ); TEX. R.APP.P. 50(d). All of the State's pleadings treat the proceedings as a summary judgment. The appellants themselves stated that they were responding to the "Defendant's Motion for Summary Judgment." We hold that even though appellants failed to appear

at the hearing, the trial court's judgment was a summary judgment, not a default judgment.

Concerning the merits, the State conceded that it had no deed to the property; rather, it relied on cases holding that a deed's existence may be shown through circumstantial evidence. *See Franzen v. B.J. Dale*, 462 S.W.2d 94, 98 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ); *Webb v. British American Producing Co.*, 281 S.W.2d 726, 733 (Tex. Civ.App.—Eastland 1955, writ ref'd n.r.e.). *See also Magee v. Paul*, 110 Tex. 470, 221 S.W. 254, 256–57 (1920).[4] In response, the appellants presented only their own affidavits. Bell stated that he was present when the county removed bodies "from the roadway" of Highway 6 (rather than the right-of-way seized in 1991) and placed them in an area near the rear of the cemetery. He also stated that his father had no right to sell any of the property because it was his mother's separate property. Finally, Bell stated he owned an interest in the disputed property.

Williams stated that the county removed bodies from the "construction area" of what

---

3. The appellants base their argument on *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939), a case dealing with default judgments. In that case, the court held:

    A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to mistake or accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

    *Id.* The *Craddock* rule also applies to post-answer default judgments. *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex.1966).
    Texas courts of appeals do not agree on whether *Craddock* applies in situations like this, which have been called default summary judgments. For cases holding that *Craddock* does not apply, *see Rabe v. Guaranty Nat'l Ins. Co.*, 787 S.W.2d 575, 579 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Enernational Corp. v. Exploitation Engineers, Inc.* 705 S.W.2d 749, 751 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). These cases have been criticized by a distinguished practitioner and commentator, Timothy Patton. *See* Patton, SUMMARY JUDGMENTS IN TEXAS, 112, 114 (1994). Four other courts have held that *Craddock* does apply. *Washington v. McMillan*, 898 S.W.2d 392 (Tex.App.—San Antonio,

1995, no writ); *Gonzales v. Surplus Ins. Serv.*, 863 S.W.2d 96, 102 (Tex.App.—Beaumont 1993, writ denied); *Krchnak v. Fulton*, 759 S.W.2d 524, 529 (Tex.App.—Amarillo 1988, writ denied); *Costello v. Johnson*, 680 S.W.2d 529, 531 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). *See also Mosser v. Plano Three Venture*, 893 S.W.2d 8, 12 (Tex.App.—Dallas 1994, no writ). (holding that *Craddock* generally applies but not upon the facts of that case).
    Based upon our disposition of this case, we need not decide that issue. It is discussed in the concurring opinion.

4. We note that the *Magee* and *Webb* cases were about titles obtained through adverse possession—not by deed. *Magee*, 221 S.W. at 256–57; *Webb*, 281 S.W.2d at 733.

    Since it is not consistent with human experience for one really owning property of value to assert no claim thereto, but to acquiesce for a long period of time in an unfounded, hostile claim, the rule is sound which permits the inference that an apparent owner has parted with his title from evidence, first, of a long-asserted and open claim, adverse to that of the apparent owner; second, of nonclaim by the apparent owner; and, third, of acquiescence by the apparent owner in the adverse claim. *Magee*, 221 S.W. at 256–57; *Webb*, 281 S.W.2d at 733.

was to become Texas Highway 3. The bodies were reinterred in another part of the cemetery. He further stated:

> The Plaintiffs have legal and equitable title to the property in question. The property that is the subject of this suit has always been used as a cemetery. We have permitted such use and have never ceased to permit said use. Any interest contrary to use as a cemetery reverts in fee to us.

These affidavits create fact issues as to ownership of the property under both theories advanced by the State.

We sustain the first point of error.

■ In their second point of error, the appellants claim that the trial court's judgment is interlocutory because the theories advanced by the State in its motion for summary judgment are incompatible. We disagree.

■ Even if the appellants are correct, a summary judgment granted on unspecified grounds will be affirmed upon any theory presented that establishes a right to judgment as a matter of law. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). It is irrelevant, therefore, that the judgment does not address each ground presented in the motion; the judgment is still considered final and appealable.

We overrule the second point of error.

The judgment is reversed, and the cause is remanded.

COHEN, J., filed a concurring opinion.

COHEN, Justice, concurring.

I take the unusual but not unprecedented step of concurring to my own opinion in order to express concerns about some language in *Enernational Corp. v. Exploitation Engineers, Inc.*, 705 S.W.2d 749, 751 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), and *Rabe v. Guaranty Nat'l Ins. Co.*, 787 S.W.2d 575, 579 (Tex.App.—Houston [1st Dist.] 1990, writ denied). *See Vargas v. State*, 838 S.W.2d 552, 557–58 (Tex.Crim.App.

1992) (Benavides, J., concurring); *Thurman v. State*, 861 S.W.2d 96, 101 (Tex.App.—Houston [1st Dist.] 1993, no pet.) (Cohen, J. concurring).

Both cases reviewed summary judgments in which the appellants (non-movants) failed to file any response.[1] *Enernational*, 705 S.W.2d at 751; *Rabe*, 787 S.W.2d at 579. In both cases, we held that the rule in *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939), which favors parties appealing default judgments, did not apply because a summary judgment is granted only if the movant's proof is sufficient as a matter of law, not because the non-movant fails to appear. *Id.* As stated in footnote 3 to the panel opinion in this case, that conclusion is questionable, has been criticized by a commentator, and has not been followed by four of our sister courts.

I write today to point out that those statements in *Enernational* and in *Rabe* were not necessary to either decision. In both cases, after declaring that sweeping but questionable principle of law, we went on to decide whether relief should be granted based on *Craddock*, and we held that both appellants should lose because neither met *Craddock's* requirements. *Enernational*, 705 S.W.2d at 752; *Rabe*, 787 S.W.2d at 579–80. Thus, both decisions were wholly supported by a separate and independent ground—*Craddock v. Sunshine Bus Lines*. On that basis, both decisions were right.

I confess to having joined the *Enernational* opinion without qualification. Despite doubts about the statement that *Craddock* did not apply, I agreed that Enernational deserved no relief because it had not met the *Craddock* requirements. I should have concurred then. Now, nine short years later, I welcome this opportunity to set the record straight.

I conclude with the immortal words of Mr. Justice Jackson:

> Precedent ... is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and per-

1. This case is different. Appellants here filed responses, but they did not appear at the oral

hearing.

haps misled others.... Baron Bramwell extricated himself from a somewhat similar embarrassment by saying, "The matter does not appear to me now as it appears to have appeared to me then." ... And Mr. Justice Story, accounting for his contradiction of his own former opinion, quite properly put the matter: "My own error, however, can furnish no ground for its being adopted by this Court." ... Perhaps Dr. Johnson really went to the heart of the matter when he explained a blunder in his dictionary—"Ignorance, sir, ignorance." But an escape less self-depreciating was taken by Lord Westbury, who, it is said, rebuffed a barrister's reliance upon an early opinion of his Lordship: "I can only say that I am amazed that a man of my intelligence should have been guilty of giving such an opinion." If there are other ways of gracefully and good-naturedly surrendering former views to a better considered position, I invoke them all.

*McGrath v. Kristensen,* 340 U.S. 162, 177–78; 71 S.Ct. 224, 233, 95 L.Ed. 173 (1950).