**HOME SAVINGS ASSOCIATION, Relator,**

v.

**Honorable Denzil BEVERS, Judge, Respondent.**

**No. 07–87–0320–CV.**

Court of Appeals of Texas, Amarillo.

Feb. 10, 1988.

Robert C. Prather, Jordan, Dunlap & Prather, Dallas, for relator.

Donald M. Hunt, Carr, Evans, Fouts & Hunt, C. Michael Ward, Curry, Curry & Robinson, Lubbock, for respondent & real parties in interest—Plains Nat. Bank of Lubbock and Briercroft Sav. Ass'n.

Searcy L. Simpson, Jr., Simpson, Dowd & Kaplan, P.C., Dallas, for real parties in interest—Dr. Ray E. Santos.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

We granted relator Home Savings Association leave to file its petition for writ of mandamus to determine whether respondent, Honorable Denzil Bevers, Judge of the 72nd Judicial District Court of Lubbock County, was required to sustain, or had the discretion to deny, relator's pleas in abate-ment. By the pleas, relator sought the abatement and dismissal, or the abatement and transfer to the 298th Judicial District Court of Dallas County, of two lawsuits pending in the Lubbock County District Court. Concluding that the pleas must be sustained under the applicable principles of law, we conditionally grant the writ.

This original mandamus proceeding is the outgrowth of earlier events followed by procedural maneuvering. In April or May of 1985, Dr. Ray E. Santos purchased 314.-64 acres of land in Collin County, effected with a $5,000,000 loan obtained from Brier-croft Savings Association in Lubbock and secured by a first lien on the land. The loan was made for a period of ninety days and, at the end of the period, Dr. Santos was pressed for payment.

In November of 1985, Dr. Santos, the sole owner and officer of Santos Orthope-dic Clinic, P.A. in Lubbock, arranged for a loan from relator at its Dallas office. The loan was made to the Clinic in the amount of $6,248,656. The loan was payable in full on 1 November 1987, and its payment was secured by the guarantee of Dr. Santos, a deed of trust lien on the Collin County land, and two letters of credit obtained by Dr. Santos. One of the letters of credit was issued by Plains National Bank in Lubbock in the sum of $500,000; the other was issued by Briercroft Savings Association in Lubbock in the sum of $1,000,000. At the same time, the Clinic executed an exclusive listing agreement with Family Develop-ment Corporation, a subsidiary of relator, to sell the Collin County land, and granted relator a 25% participation interest in the net sales profit from the sale of the land.

On 1 July 1986, the loan was restruc-tured to provide that Dr. Santos was indi-vidually liable for $1,748,656, and the Clinic was liable for $4,500,000, which was guar-anteed by Dr. Santos. The security for payment remained with an amendment of the wording of the letter of credit issued by Plains.

In June of 1987,[1] relator made a demand for payment of accrued interest on the

---

1. All dates hereinafter mentioned are in the calendar year 1987.

notes, indicating that upon nonpayment it would exercise its right to demand immediate payment of the principal and accrued interest. The following July, relator declared the notes in default and made presentment under the letters of credit, which were not paid.

Thereafter on July 16, Dr. Santos and the Clinic commenced an action in the 298th Judicial District Court of Dallas County against relator and Family Development Corporation. By the action, relator and Family were accused of an illegal tying arrangement, antitrust and Texas Securities Act violations, breach of contract and fiduciary duties, negligence, fraud in the transaction, deceptive trade practice violations, and conspiracy in connection with the loan and exclusive listing transactions. Doctor Santos and the Clinic sought equitable relief, actual and punitive damages, attorney's fees, and costs, praying in the interim for a temporary restraining order and, upon a hearing, for a temporary injunction preventing relator from taking any action to collect the notes, to exercise any right under the loan documents, to present for payment the letters of credit, and to foreclose upon the land.

A temporary restraining order was obtained and, during the July 31 hearing for a temporary injunction, the parties agreed to a temporary injunction expiring at midnight on November 1, contingent upon certain conditions. Among the conditions was one that Dr. Santos and the Clinic would bring Plains and Briercroft into the lawsuit, and another was that relator would be permitted to make presentment for payment of both letters of credit, but there would be no funding until November 2. The court, though announcing its approval of the settlement between the parties, did not render judgment on the agreement.

During the following month of August, relator presented the letter of credit to Plains, which declined to honor the presentment. Subsequently on September 14, the court signed an order for a temporary injunction forbidding relator from presenting or collecting the letters of credit, and from exercising any rights under the notes or deed of trust, including foreclosure, until judgment is entered in the cause.

Plains and Briercroft not having been brought into the suit, relator moved on September 25 for leave to add them as parties. At a September 28 hearing, the court declined to rule on the motion, but verbally modified the injunctive order for Plains and Briercroft to receive notice to transfer the letter-of-credit funds on the second day of the order.

Afterwards on October 9, the court signed a temporary injunction order as a substitution for or a modification of the September 14 order. The predicate for the order was the court's finding upon a consideration of the evidence that Dr. Santos and the Clinic have a probable right of recovery, an inadequate remedy at law, and a probable injury if relator is not restrained from its present intent to collect the two letters of credit and to foreclose upon the land before judgment can be rendered in the cause. The court ordered, in part and in brief, that: Plains and Briercroft shall be given notice of the order; relator shall take all necessary steps to present and collect the letters of credit, but is restrained from receiving payment of the proceeds until after 11:59 p.m. on November 1; Plains and Briercroft shall, unless written notice of dishonor is given to relator, pay the amounts of the letters of credit by wire transfer at 10 a.m. on November 2; and relator shall refrain from taking any foreclosure action until judgment is entered in the cause.

Relator's October 23 request for Briercroft to pay its letter of credit was not honored. The day after relator presented the letter of credit to Plains on October 28, Plains filed cause no. 87–520,229 in the 72nd Judicial District Court of Lubbock County against relator and Dr. Santos, seeking to restrain and enjoin relator from requiring payment under its letter of credit until rendition of a final judgment declaring the rights of the parties, including whether Plains is obligated to fund the letter of credit. The alleged bases for the relief requested were that from the information provided to Plains concerning the

Dallas lawsuit, it appeared that there was fraud in the transaction between Dr. Santos and relator, that Dr. Santos is not legally indebted to relator in any amount, and that relator has not strictly complied with the terms of the letter of credit. The court temporarily restrained relator from pursuing or requiring payment of the letter of credit.

Afterwards on November 2, Briefcroft filed cause no. 87–520,264 in the 99th Judicial District Court of Lubbock County against relator and Dr. Santos. The object of the suit was to restrain and enjoin relator from requiring payment of its letter of credit until a final hearing for a declaratory judgment determining whether Briercroft is required to fund the letter of credit, and if so, for judgment against Dr. Santos for such funded amount. The alleged bases for the relief requested were that Briercroft had information that there was fraud in the transaction between Dr. Santos and relator, that Dr. Santos is not legally indebted to relator in any amount equal to or in excess of the letter of credit, and that relator's presentment and demand for payment is not in compliance with the terms of the letter of credit. The court also temporarily restrained relator from pursuing or requiring payment of the letter of credit.

The next day in the Dallas court, relator reurged, and the court granted, its motion for leave to join Plains and Briercroft to the Dallas suit. Relator's action against Plains and Briercroft was filed on November 3, and amended two days later. In joining Plains and Briercroft in the Dallas suit, relator alleged that they had wrongfully dishonored the letters of credit, and that their joinder is necessary to provide complete relief to and protection of the parties since their claims in the suits in Lubbock are necessary to the proper adjudication of the suit in Dallas. Relator sought damages of $1,500,000 plus interest from Plains and Briercroft for their dishonor of the letters of credit, and requested that they be temporarily restrained and then enjoined from proceeding in the two Lubbock County lawsuits.

On the following day, November 6, relator moved the Lubbock courts to transfer the two causes to the 298th Judicial District Court of Dallas County. At the same time, relator filed a plea in abatement in cause no. 87–520,229 in Lubbock County, praying that the cause should be abated and dismissed or transferred to the Dallas court. Three days later, relator filed a similar plea in abatement in cause no. 87–520,264 in Lubbock County.

Upon motion, cause no. 87–520,264 pending in the 99th Judicial District Court of Lubbock County was transferred to the 72nd Judicial District Court of Lubbock County where it was consolidated with cause no. 87–520,229 pending in that court for joint hearings and trial of all matters. Afterwards on November 13, respondent held a hearing on relator's pleas in abatement and, on December 8, denied the pleas with a signed order.

The December 8 denial prompted relator to initiate this original proceeding. By the proceeding, relator seeks a writ of mandamus compelling respondent to grant its pleas in abatement and dismiss or transfer the Lubbock district court causes to the 298th Judicial District Court of Dallas County.

Relator submits that it is entitled to the writ as a matter of law because the actions now pending in Dallas and Lubbock arise out of the same loan transaction and share common parties and questions of fact and of law. Plains and Briercroft reply that the lack of complete identity of parties and controversies requires the exercise of discretion to determine abatement vel non, and the correct exercise of discretion rejects mandamus.[2] In response, relator further submits that if abatement is a discretionary matter, respondent abused his discretion in denying the pleas in abatement.

Subsequently, Plains and Briercroft advanced the theory that relator's demonstration of the existence of disputed fact issues

2. Doctor Santos, disclaiming any complaint about or reason to defend respondent's ruling, respectfully declined to file an answer.

as to what exactly occurred upon presentation of the letters of credit and in other pre–Lubbock suit events rejects mandamus, because as *Cobra Oil & Gas Corporation v. Sadler,* 447 S.W.2d 887, 895 (Tex. 1968), instructs, mandamus may not issue where fact issues must be resolved. There can be no quarrel with the principle that the office of mandamus is to execute, not to adjudicate facts; but this original proceeding was brought to settle a conflict of jurisdictions, not to adjudicate facts of the controversies pending in the different jurisdictions.

▮▮▮ Beyond peradventure, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of that of another coordinate court in which a subsequent suit is filed involving the same parties and the same controversy. *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex.1974). Even so, as a general rule an appellate court should not assume jurisdiction to issue a writ of mandamus to control or correct the trial judge's ruling on a plea of abatement filed in the subsequent suit, because the ruling is a mere incident in the normal trial process which, if erroneous, can be corrected by appeal. *Pope v. Ferguson,* 445 S.W.2d 950, 954 (Tex.1969), *cert. denied,* 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970). Still, if by its order, injunctive or otherwise, one court actively interferes with the jurisdiction of another court, there is a conflict of jurisdiction. *Abor v. Black,* 695 S.W.2d 564, 567 (Tex. 1985). When the conflict is called to the court's attention by a party's plea in abatement, it is settled by dismissal of the subsequent suit, which may be compelled by mandamus.[3] *Curtis v. Gibbs, supra.*

▮▮▮ The injunctive orders entered in the Dallas and Lubbock courts operate to direct opposite actions respecting the letters of credit. As a result, each court's order actively interferes with the jurisdiction of the other court, thereby creating a conflict of jurisdiction. Relator, having raised the conflict by its pleas in abate-

ment, which were denied, is entitled to a writ of mandamus unless there is a lack of complete identity of parties and controversies between the Dallas and Lubbock suits. In that event, the question whether an abatement should be granted is a matter within the sound discretion vested in the trial court. *Dolenz v. Continental Nat. Bank of Fort Worth,* 620 S.W.2d 572, 575 (Tex.1981). Mandamus does not lie to control or direct the action of the trial court in a matter involving discretion; nevertheless, mandamus will issue to correct a clear abuse of discretion. The issue obtains because a clear abuse of discretion exists when the court's decision is contrary to the one compelled by the facts and circumstances, thereby actually extinguishing any discretion in the matter, *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917–18 (Tex.1985), or is arbitrary, or is unreasonable, or is reached without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

▮▮▮ Upon issuance of their letters of credit, Plains and Briercroft each assumed a primary obligation independent of the underlying transaction between Dr. Santos and relator, and each engaged that it would pay its letter of credit upon the required presentation. Tex.Bus. & Com.Code Ann. § 5.114(a) (Vernon 1968); *Rep. Nat. Bank v. Northwest Nat. Bank,* 578 S.W.2d 109, 114 (Tex.1979). Notwithstanding, Plains and Briercroft are permitted to dishonor, and a court may enjoin the honoring of, the demand for payment of the letter of credit each issued if, as they each pleaded, (1) there is noncompliance with the terms of the letter of credit, or (2) there is fraud in the transaction. Tex.Bus. & Com.Code Ann. § 5.114(b) (Vernon Supp.1988). Thus, the Lubbock court in which Plains' and Briercroft's suits were consolidated had jurisdiction to restrain the payment of the letters of credit pending a determination of the fact issues raised by the allegations of noncompliance and fraud in the transac-

---

**3.** It is recognized that in some situations, the abatement of a cause does not call for its dismissal. *See, e.g., Texas Emp. Ins. Ass'n v. Baeza,* 584 S.W.2d 317, 321–22 (Tex.Civ.App.—Amarillo 1979, no writ).

tion, and to pass on the pleas of abatement addressed to it. Respondent having denied the pleas in abatement, the Lubbock court retained dominant jurisdiction of the controversy unless and until the action of denial is reversed upon appeal.

■ Notwithstanding the Lubbock court's acquisition of jurisdiction, the later permission by the Dallas court to bring, coupled with the pleadings bringing, Plains and Briercroft into the pending Dallas suit invoked the jurisdiction of the Dallas court over them as if they had been made parties when the action was originally filed in the Dallas court. *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1070 (1926). Yet, Plains and Briercroft argue that the Lubbock proceedings in reality represent the first-to-be-filed cases because the declaratory judgment causes of action, *i.e.,* to declare the dishonor of the letters of credit for noncompliance and fraud, were not raised in the Dallas case at the time the Lubbock cases were filed.

The argument is not persuasive in view of the overriding reality that when the Dallas case was first filed, the jurisdiction of the Dallas court attached, activating that court's power to permit new parties to be added and the pleadings to be amended, and to determine all essential issues. *Id.* 285 S.W. at 1069. The Dallas court permitted the addition of Plains and Briercroft as parties to the Dallas case, and the amended pleadings pose for that court's determination the issue whether Plains and Briercroft rightfully or wrongfully dishonored the letters of credit. Consequently, the jurisdiction of the Dallas court cannot be assumed or arrested by the subsequent proceedings in the Lubbock court, *id.* at 1070, unless there is a lack of complete identity of parties and issues between the Dallas and Lubbock suits which permits respondent to exercise discretion in the matter of abatement. *Dolenz v. Continental Nat. Bank of Fort Worth, supra.*

■ Indisputably, all of the parties in the Lubbock proceedings are parties in the Dallas lawsuit. Although the Dallas suit includes parties, *viz.,* Santos Orthopedic Clinic, P.A. and Family Development Corporation, which are not parties in the Lubbock proceedings, their absence from the Lubbock proceedings cannot defeat the jurisdiction of the Dallas court if the same controversy is involved in both proceedings. *Ex Parte Lillard,* 159 Tex. 18, 314 S.W.2d 800, 806 (1958).

■ The determinate question, then, is whether there is a complete identity of the controversies pending in the two courts. In this regard, the identity of the controversies is satisfied when the issues presented by the pleadings in the subsequent proceedings are necessarily involved and determinable in the suit first filed. *Texas Pipe Line Co. v. Ennis,* 127 Tex. 470, 93 S.W.2d 148, 150 (1936). Stated another way, the controversies are considered the same if the judgment in the action first filed would dispose of all issues presented in the subsequent filing. 2 R. McDonald, Texas Civil Practice in District and County Courts § 7.10 (rev. 1982).

■ The causes of action pending in the two courts have a foundation in the same transaction and involve the same ultimate determination—Dr. Santos' liability, if any, on the notes. In the Dallas suit, Dr. Santos and the Clinic have alleged, and relator has denied, fraud in the transaction, one of the reasons pleaded by Plains and Briercroft for dishonoring their letters of credit. In bringing Plains and Briercroft into the Dallas suit, relator alleged that they had wrongfully dishonored the letters of credit. By so pleading a wrongful dishonor, relator did not specifically plead its compliance with the terms of the letters of credit and the absence of fraud in the transaction; but relator assumed the burden of proving its pleading, and Plains and Briercroft can assert their defenses of noncompliance and fraud in the Dallas suit, or be barred from asserting them in the Lubbock proceedings. *Cleveland v. Ward, supra,* 285 S.W. at 1070. Thus, the issue of the rightful or wrongful dishonor of the letters of credit is joined in the Dallas suit, and the determination of that issue will necessarily determine, and thereby foreclose adjudication of, the causes of action in the Lubbock proceedings.

It follows that the Dallas court, having first acquired jurisdiction, has before it all of the necessary parties and all issues necessarily or properly involved in the proceedings in both courts. The judgment of the Dallas court will resolve those issues and become res adjudicata of the matters pending in both courts. *Cleveland v. Ward, supra,* 285 S.W. at 1070. Hence, given the dominant jurisdiction of the Dallas court, it was not a matter of discretion, but the clear duty of respondent to sustain relator's pleas in abatement.

Accordingly, relator is entitled to the writ of mandamus. We are confident that respondent will act promptly to set aside his order denying relator's pleas in abatement and sustain the pleas. The writ of mandamus will issue only if respondent fails to do so.