**In re Attorney General of Texas John CORNYN; Sergeant Investigator Stephen Acker; and Assistant Attorneys General David Puryear, W. Reed Lockhoof, and Robert B. Maddox, Relators.**

**No. 01–00–00758–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 7, 2000.

and individually.

John Cornyn, Robert Bruni Maddox, Walter Reed Lockhoof, Gregory S. Coleman, Austin, for Relator.

Rusty Hardin, Cathy Herasimchuk, Houston, for Real Party In Interest.

Panel consists of Justices COHEN, TAFT, and NUCHIA.

## OPINION

MURRY B. COHEN, Justice.

Relators seek a writ of mandamus, complaining that District Judge Patricia Hancock abused her discretion by granting a temporary restraining order (TRO) against

them; ordering a show-cause hearing against relators Cornyn and Maddox for contempt for violating the TRO; holding relators Lockhoof and Acker in contempt for violating the TRO; and setting a temporary injunction hearing. We conditionally grant the writ.

## Background

The real parties in interest are MonetizeeMedia.com (Monetize), Danny Michael Beavers, Donald Mark Beavers, Roy W. Weisner, and Robert W. Thomas, Jr. (collectively, the Monetize parties). Weisner and Danny and Donald Beavers created Monetize, which their pleadings describe as an "internet-based media network." Monetize's "gaming" directory includes various betting and gambling websites that the Monetize parties allege are owned, operated, and hosted by companies other than the Monetize parties. Relators dispute this and claim the Monetize parties, in running the website, are committing the offenses of communicating gambling information,[1] promoting gambling,[2] engaging in organized criminal activity,[3] possessing gambling paraphernalia,[4] and money laundering.[5] The Monetize parties deny these claims.

Relator Acker, who had been investigating the Monetize parties, swore out an affidavit on June 23, 2000 that resulted in two search warrants from the Honorable Mary Bacon, visiting judge of the 184th District Court in Harris County; one from the Honorable Dan Beck, judge of the 155th District Court in Waller County; one from the Honorable Oliver Kitzman, visiting judge of the District Court in Brazos County; and one on June 27, 2000 from the Honorable Jan Krocker, judge of the 184th District Court in Harris County. Each of those district judges ordered the

seizure of "instruments, instrumentalities, and evidence used in the commission of" the claimed offenses and ordered as follows:

FURTHER, YOU[6] ARE ORDERED, pursuant to the provisions of Article 18.10, Texas Code of Criminal Procedure (T.C.C.P.) *to retain custody of any property seized pursuant to this warrant, until further order of this court or any other court of appropriate jurisdiction which shall otherwise direct the manner of safekeeping of said property.* This court grants you leave and authority for the removal of said property from this county to Travis County, Texas, if said removal is necessary for safekeeping, examination or if such removal is authorized by provisions of Article 18.10, T.C.C.P.

. . .

*IT IS FURTHER ORDERED, that the computer processing unit and related evidence seized be held as evidence for a period no less than thirty (30) days after the final disposition of all related criminal matters filed in the [applicable] County Courts System,* at which time said computer processing unit and related evidence shall be subject to forfeiture under Article 18.18 of the Texas Code of Criminal Procedure to the State of Texas by and through, the Office of the Attorney General for proper disposal. . . . .

(Emphasis added.)

Pursuant to the search warrants, on June 26, 2000, officers seized computers, file servers, documents, and $35,000 from the Monetize parties. The Monetize parties allege confidential business trade secrets, private documents, and money and material unrelated to the investigation

---

1. Tex. Pen.Code Ann. § 47.05 (Vernon 1994).

2. Tex. Pen.Code Ann. § 47.03 (Vernon 1994).

3. Tex. Pen.Code Ann. § 71.02 (Vernon Supp. 2000).

4. Tex. Pen.Code Ann. § 47.06 (Vernon 1994).

5. Tex. Pen.Code Ann. § 34.02 (Vernon 1994).

6. The warrants were addressed to the sheriff or any peace officer of that county or any peace officer of the State.

were seized. The Monetize parties have never been accused of any crime in these matters, and no grand jury has been convened.

On July 10, 2000, the Monetize parties sued relators in the 333rd District Court in Harris County for

1. Section 1983 [7] violations of
 a. the Fourth Amendment, based on allegedly intentional omissions and misleading statements in the search warrant affidavits, the executing officers' conduct during the seizure, and the alleged encouragement and assistance of these actions by the Attorney General's office, and
 b. their commercial free speech rights;
2. violations of the Federal Electronic Communications Privacy Act; [8] and
3. violations of the Federal Privacy Protection Act. [9]

They sought a TRO and temporary injunction, preventing further examination and retention of the seized property and further searches or seizures. They claim they will quickly be put out of business, and their trade secrets will be divulged, if relators keep their property for the investigation's duration, which, relators admit, is limited only by the applicable statute of limitations. Accordingly, they sought a TRO for the return of their property on these grounds; they have not sought a ruling on the merits of their underlying claims.

After a TRO hearing attended by all parties, on July 13, 2000, Judge Hancock found that the Monetize parties needed their property returned to operate their business and to prevent examination and dissemination of their proprietary technology, which would destroy its value. She granted a TRO preventing relators from further "search of or examination of" any of the seized property; requiring them to return all seized property within two days; allowing relators first to download or copy anything they deemed material to their investigation; allowing relators to seek an extension for extraordinary hardship in copying; and setting a temporary injunction hearing for July 18, 2000.

On the morning of July 14, 2000, relators filed a request for a temporary stay of the TRO and a petition for writ of mandamus in this Court, [10] arguing the TRO and all orders based on it were void. We denied the stay without ruling on the petition. Meanwhile, relators neither complied with the TRO by returning the seized property nor requested an extension of time for copying it. A show-cause hearing for all relators was set for July 18, 2000. Relators filed a plea to the jurisdiction "to the extent [appellees] seek the return of all property seized pursuant to a number of search warrants executed on or about June 26, 2000. ...."; Judge Hancock denied it the same day. Judge Hancock found relators Lockhoof and Acker in contempt of court for violating the TRO, assessed each 30 days in jail, and released them on personal recognizance. The contempt hearing for relators Cornyn and Maddox was reset until July 28, 2000. The temporary injunction hearing was reset for the afternoon of July 26, 2000.

On the morning of July 26, 2000, this Court stayed all outstanding orders in the trial court and submitted the mandamus cause. [11] On August 4, 2000, relators

---

7. 42 U.S.C. § 1983 (Supp.2000).

8. 18 U.S.C. §§ 2701–2711 (1993 & Supp. 2000).

9. 42 U.S.C. §§ 2000aa–2000aa–12 (1996 & Supp.2000).

10. Relators filed an amended petition for writ of mandamus on July 20, 2000. We refer to the amended petition throughout our opinion.

11. We stayed the TRO the day before it expired by its own terms, intending also to stay its expiration date. Even if the TRO's expiration were not stayed, this mandamus proceeding would not be moot. A TRO's expiration

appealed the denial of their plea to the jurisdiction.[12]

## Mandamus Remedy

Relators claim the TRO and all orders based on it are void because the trial court lacked jurisdiction to enter them. Mandamus lies over an interlocutory or temporary order that the court had no jurisdiction to make. *See Dunn v. Street*, 938 S.W.2d 33, 35 (Tex.1997) (orig.proceeding) (void show-cause order); *Lord v. Clayton*, 163 Tex. 62, 352 S.W.2d 718, 719 (1961) (orig.proceeding) (void TRO); *State v. Bush*, 151 Tex. 606, 253 S.W.2d 269, 273 (1952) (orig.proceeding) (void TRO); *State v. Ferguson*, 133 Tex. 60, 125 S.W.2d 272, 275, 278 (1939) (orig.proceeding) (void TRO). Mandamus will generally not lie over a contempt order assessing confinement, and neither will habeas relief if, as here, the confinement was suspended. *See Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 827, 832 (1960) (op. & op. on reh'g) (orig.proceeding); *Ex parte Sealy*, 870 S.W.2d 663, 666–67 (Tex.App.—Houston [1st Dist.] 1994, orig. proceeding). When neither habeas nor mandamus will lie for a void contempt order, we may still advise the trial judge of the contempt order's invalidity, and we are to presume the trial judge will not enforce it. *See Deramus*, 333 S.W.2d at 827, 831–32; *Ex parte Sealy*, 870 S.W.2d at 667.

The Monetize parties have moved to "dismiss" the mandamus petition because similar legal issues will be decided in the interlocutory appeal. We deny the motion for two reasons. First, no interlocutory appeal lies from the TRO or the orders based on it. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a) (Vernon Supp. 2000). Second, mandamus will lie to prevent a court from exercising jurisdiction it does not have, even if there is an adequate remedy by appeal. *See In re Union Pac. Resources Co.*, 969 S.W.2d 427, 428 (Tex. 1998) (orig.proceeding); *Hansen v. Sullivan*, 886 S.W.2d 467, 469 (Tex.App.—Houston [1st Dist.] 1994, orig. proceeding); *Decker v. Lindsay*, 824 S.W.2d 247, 249 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding). Accordingly, some courts have granted mandamus relief over void interlocutory orders even when those same orders could have been appealed. *See State v. Logue*, 376 S.W.2d 567, 572 (Tex. 1964) (orig.proceeding) (granting mandamus over void temporary injunction); *Rubin v. Hoffman*, 843 S.W.2d 658, 659 (Tex.App.—Dallas 1992, orig. proceeding) (holding mandamus lay over void temporary injunction without showing that no adequate remedy existed at law); *see also*

---

usually renders its challenge moot. *See Hermann Hosp. v. Tran*, 730 S.W.2d 56, 57 (Tex. App.—Houston [14th Dist.] 1987, no writ). However, we have jurisdiction to review a challenged act that is of such short duration that review cannot be obtained before the issue becomes moot. *E.g., Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex.1999). There must be a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.; see also Spring Branch I.S.D. v. Reynolds*, 764 S.W.2d 16, 18 (Tex.App.—Houston [1st Dist.] 1988, no writ). Here, the TRO was effective for only 14 days. The issues this proceeding raises are difficult and, as the parties agree, the law is of virtual first impression. Therefore, it would be extremely difficult for relators to seek and obtain appellate review of the TRO, and for the Monetize parties to brief their response, before the order's expiration. A TRO's very nature leaves an investigating agency little

time to seek mandamus relief before either complying (and, as here, relinquishing potential criminal evidence) or being held in contempt. Additionally, relators would face similar orders in the immediate future were we not to rule. Judge Hancock had scheduled another contempt hearing and a temporary-injunction hearing that were actively pursued until our stay issued. Accordingly, we conclude that the issues before us are not moot and that we should address the petition's merits. *Cf. In re Cummings*, 13 S.W.3d 472, 475 (Tex.App.—Corpus Christi 2000, no pet.) (holding appeal of expired, one-year protective order not moot under "capable of repetition yet evading review" and another mootness exception).

12. The appeal of the order denying the jurisdictional plea will be disposed of by separate opinion.

*Lord,* 352 S.W.2d at 719 (holding mandamus lay over void TRO although normally "the parties would have been relegated to" the remedy of appealing a later temporary injunction order). *Cf. Ferguson,* 125 S.W.2d at 274 (holding Supreme Court had mandamus jurisdiction over void TRO despite pendency in court of appeals of interlocutory appeal in which appellant claimed TRO was really temporary injunction).

### Discussion

The temporary relief Judge Hancock granted was for the property to be returned after being copied. Relators argue Judge Hancock thereby altered the warrants' safekeeping orders, which was error because only the magistrates who issued those orders could grant that relief at this stage. We agree.

We first conclude that Judge Hancock's TRO directly conflicts with the warrants: her TRO orders relators to cease further "search of or examination of" any of the seized property and to return it after copying; the warrants grant relators free access to search the property and require relators to keep the actual property "until further order of this court or any other court of appropriate jurisdiction." These cannot be reconciled.

1. **Code of Criminal Procedure Chapter 18 Provides a Procedure for the Relief the Monetize Parties Sought by TRO**

▪ The Monetize parties contend that they must be allowed injunctive relief because they have no other remedy before charge or indictment. We disagree. Chapter 18 of the Code of Criminal Procedure provides a remedy.

Search warrants are issued by "magistrates," which include district court judges. TEX.CODE CRIM. P. ANN. art. 2.09, 18.01(a), (h) (Vernon Supp.2000). The officer executing the warrant must return it to "the proper magistrate." *Id.* art. 18.06(a) (Vernon 1977). The officer must also take the seized property "before the magistrate."

*Id.* art. 18.09 (Vernon 1977). Upon returning the search warrant, that officer

> shall likewise deliver to *the magistrate* a copy of the inventory of the property taken into his possession under the warrant. The officer who seized the property shall retain custody of it until *the magistrate* issues an order directing the manner of safekeeping the property. The property may not be removed from the county in which it was seized without an order approving the removal, issued by *a magistrate in the county in which the warrant was issued;* provided, however, nothing herein shall prevent the officer, or his department, from forwarding any item or items seized to a laboratory for scientific analysis.

*Id.* art. 18.10 (Vernon Supp.2000) (emphasis added). Property seized under a search warrant must be kept "as provided by the order of *a magistrate* issued in accordance with Article 18.10...." *Id.* art. 18.11 (Vernon Supp.2000) (emphasis added). The Code then provides as follows:

**Art. 18.12. Magistrate shall investigate**

> *The magistrate,* upon the return of the search warrant, shall proceed to try *the questions arising upon the same,* and shall take testimony as in other examinations before him.

**Art. 18.13. Shall discharge defendant**

> If *the magistrate* be not satisfied, upon investigation, that there was good ground for the issuance of the warrant, *he shall discharge the defendant and order restitution of the property taken from him,* except for criminal instruments. In such case, the criminal instruments shall be kept by the sheriff subject to the order of the proper court.

*Id.* arts. 18.12, 18.13 (Vernon 1977) (emphasis added).

The Monetize parties counter that article 18.13, which allows restitution, does not

apply because they have not yet been arrested and charged. We agree that article (1) applies post-charge or arrest only and (2) authorizes restitution only if there was no "good ground" for issuing the warrant. The Monetize parties can get no relief on these facts under article 18.13.

Relief lies elsewhere, however. Article 18.12 provides that the magistrate to whom the search warrant is returned "shall proceed to try *the questions arising upon the same,* and shall take testimony as in other examinations before him." *Id.* art. 18.12. We hold that the italicized language gives to that magistrate the authority to grant the relief the Monetize parties received from Judge Hancock—an alteration of the warrant's safekeeping terms, pending arrest and charge or indictment. Article 18.10 confirms this interpretation: it gives the same magistrate the authority to direct "the manner of safekeeping the property." *Id.* art. 18.10. This necessarily includes the authority to amend safekeeping terms. While article 18.13 allows the property's return at a post-charge stage, it does not preclude return before then under article 18.12.

■ Chapter 18 uses *"the* magistrate" to mean the one to whom the search warrant is ordered returned. For example, article 18.06 requires the executed warrant to be returned to "the proper magistrate." *Id.* art. 18.06(a). Article 18.09 then requires the officer to bring seized property before "the magistrate." *Id.* art. 18.09. Similarly, part of article 18.10 requires the officer to deliver an inventory of the property to "the magistrate" and to keep custody of the property until "the magistrate" orders otherwise. *Id.* art. 18.10. Article 18.12 also provides that "the magistrate, upon the return of the search warrant,"

must proceed to try the questions "arising upon the same." *Id.* art. 18.12. In each article, "the magistrate" can refer only to the magistrate to whom return was made.[13] Therefore, these articles extend jurisdiction before charge or indictment over the disposition of property seized under warrant to the court of the magistrate to whom the return was made.

We distinguish *Ex parte Wolfson,* on which the Monetize parties rely to argue their only recourse at this stage is in civil court, not under chapter 18. 127 Tex. Crim. 277, 75 S.W.2d 440 (1934). Wolfson's whiskey was seized during prohibition. *Id.* at 440. A grand jury no-billed him. *Id.* When he petitioned the criminal district court for his whiskey's return, the State pled for forfeiture to the State Board of Control. *Id.* The district judge ordered the whiskey sent to that board. *Id.* Wolfson appealed to the Court of Criminal Appeals. *Id.* The *Wolfson* Court first noted the predecessor to article 18.13 provided no appeal from the trial judge's ruling. *Id.* The Court then held that various articles in the predecessor of the present Alcoholic Beverage Code provided for civil forfeiture proceedings. *Id.* The Court of Criminal Appeals held it had no appellate jurisdiction over this civil matter "when no indictment is found, as in this case." *Id.* at 440–41. Contrary to the Monetize parties' interpretation, *Wolfson* did not hold that one aggrieved by an illegal search or seizure may seek his property's return before charge or indictment only in a civil action. Rather, *Wolfson* held that, when the State sought forfeiture after the accused was no-billed, proper recourse was in civil court. *See id.* at 440–41. Now, as in 1934 when *Wolfson* was decided, forfeiture proceedings under the Alcoholic Beverage Code and Code of Criminal Procedure are civil,[14]

---

**13.** Article 18.11 and the latter part of article 18.10 are not to the contrary. Article 18.10 allows the seized property to be ordered out of the county by "*a* magistrate in the county in which the warrant was issued." Tex.Code Crim. P. Ann. art. 18.10. This extends authority to more than the issuing magistrate for that

limited purpose. Recognizing this, article 18.11 requires that seized property be kept as ordered by "a magistrate" under article 18.10. *Id.* art. 18.11.

**14.** *See Fant v. State,* 931 S.W.2d 299, 307 (Tex.Crim.App.1996) (holding chapter 59 forfeiture is civil proceeding); *State v. Rumfolo,*

but *Wolfson* does not apply here for three reasons. First, this is not a civil forfeiture case following a grand jury no-bill. Moreover, in *Wolfson,* the investigation was apparently over. This investigation continues. Second, the holding in *Wolfson* was that the Court of Criminal Appeals did not have appellate jurisdiction, an issue not before us. Third, there was not in *Wolfson* a pre-arrest conflict between two trial court magistrates asserting jurisdiction over property seized under a warrant issued by one of them. And the mere fact that an order under articles 18.10 to 18.13 may be unappealable to a higher court does not authorize another court of the same level to trump that order.[15]

■ We hold that Code of Criminal Procedure article 18.12:(1) provides a remedy, including return of property, for persons whose property is seized under a search warrant before the owner's arrest and charge and (2) extends jurisdiction for this purpose to the magistrate to whom return was made (or another judge sitting for that magistrate).

We must next decide whether, under these facts, Judge Hancock had authority to interfere with this jurisdiction by issuing orders affecting the same property.

## 2. The TRO is Void

### a. Dominant Jurisdiction

■ The Monetize parties correctly state that (1) the 333rd district court had jurisdiction over their civil rights suit,[16] (2) Judge Hancock may issue TROs in any suit, and (3) nothing limits the 333rd District Court's jurisdiction to civil suits.[17]

545 S.W.2d 752, 754 (Tex.1976) (same for article 18.18); *State v. Benavidez,* 365 S.W.2d 638, 640 (Tex.1963) (same for predecessor to Alcoholic Beverage Code's forfeiture provisions).

**15.** *See* concurring opinion regarding possible appellate review by mandamus of a magistrate's safekeeping order under article 18.12.

**16.** *See* Tex. Const. art. V, § 8.

Therefore, they conclude that even if article 18.12 provides a possible remedy from the issuing magistrates, the 333rd District Court also had concurrent jurisdiction to grant relief. We disagree.

■ "When two courts have concurrent jurisdiction of a suit, the court in which the suit is first filed acquires dominant jurisdiction." *State v. Dugar,* 553 S.W.2d 102, 104–05 (Tex.1977) (citations omitted) (concluding district court in which return was not made had jurisdiction over article 18.18 civil forfeiture suit because suit for forfeiture was filed there first). As in *Dugar,* articles 18.10 to 18.12 would not have deprived Judge Hancock of jurisdiction to return the Monetize parties' property had she been the first judge to order the property's safekeeping under article 18.10. She was not. The "warrant" magistrates were.

■ The court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts. *Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex. 1974). Mandamus will lie to settle a jurisdictional conflict created when two courts interfere with each other by issuing conflicting orders or injunctions. *See Abor v. Black,* 695 S.W.2d 564, 566–67 (Tex.1985); *Curtis,* 511 S.W.2d at 267 (granting mandamus to abate and dismiss second-filed child-custody suit and to vacate second court's order suspending first court's writ of attachment for the children).

The dominant jurisdiction doctrine applies by analogy. The seizure of this property under warrant is a "suit" before these

**17.** *See* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. § 24.007 (Vernon 1988) (district court's jurisdiction set by Texas Constitution art. V, § 8); *Id.* § 24.279(b) (Vernon 1988) (requiring the 333rd District Court of Harris County only to give "preference" to civil matters); *Lord v. Clayton,* 163 Tex. 62, 352 S.W.2d 718, 721–22 (1961); *State v. Landry,* 793 S.W.2d 281, 284 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding) (district courts have constitutional jurisdiction over both criminal and civil cases).

magistrates: before arrest and charge or indictment, the remedy for safekeeping property seized by warrant is that in articles 18.10–12. Here, judicial power over this property was first exercised in the magistrates' courts. Judge Hancock acted later. Her orders affect the same property seized under the search warrants; the same individuals, company, and state agency are involved; and the courts had coordinate jurisdiction. The doctrine of dominant jurisdiction was created to avoid conflicts like this among courts having concurrent subject-matter jurisdiction. Therefore, we hold the magistrates' courts have "dominant jurisdiction" at this stage over the seized property's disposition. *Cf. Dugar*, 553 S.W.2d at 105.[18]

Consequently, the TRO is void, and mandamus lies. *Cf. Curtis*, 511 S.W.2d at 267; *Home Sav. Ass'n v. Bevers*, 745 S.W.2d 504, 509 (Tex.App.—Amarillo 1988, no writ) (granting mandamus to abate second-filed suits because second courts' orders temporarily restraining collection on a letter of credit directly conflicted with first court's temporary injunction requiring all necessary steps to present and collect the letter of credit).

■ The Monetize parties counter that the warrants order the seized property held "until further order of this court *or any other court of appropriate jurisdiction*," which they claim includes Judge Hancock's court. That language changes nothing. Rather, it merely recognizes that jurisdiction over seized property extends to different courts at different times and for different purposes: for example, to the magistrate to whom return was made, for the seized property's pre-charge or pre-indictment safekeeping and for the property's or person's release before examining trial;[19] to any magistrate in the county of seizure, for removing the property pre-charge or pre-indictment from the county in which it was seized;[20] to a magistrate presiding over an examining trial;[21] to the judge of the court in which indictment is presented, for any matter concerning the property;[22] to the judge of the court in which the accused is convicted, for forfeiture of certain property;[23] to the magistrate to whom the return was made, for article 18.18 forfeiture proceedings when no prosecution or conviction occurs;[24] etc. It does not allow a judge to modify, before charge or indictment, a prior article 18.10 safekeeping order issued by another judge.

We also distinguish each of the federal cases on which the Monetize parties rely

18. The Monetize parties have cited Code of Criminal Procedure article 18.21, section 12(a) as an example of a court in a civil suit having jurisdiction to grant injunctions to protect those aggrieved by violations of that article. Tex.Code Crim. P. Ann. art. 18.21, § 12(a) (Vernon Supp.2000). They have not alleged that cause of action, however. Even if they had, the common-law doctrine of dominant jurisdiction would still apply to this case.

19. Tex.Code Crim. P. Ann. arts. 18.10–.12 (Vernon 1977 & Supp.2000).

20. *Id.* art. 18.10.

21. *See id.* art. 18.03 (search warrant may include arrest warrant); *id.* art. 18.13 (allowing the magistrate to release defendant and restore property if no good ground for warrant's issuance); *id.* art. 18.14 (Vernon 1977) (allowing examining trial "as in other cases" if magistrate concludes there was good cause

for arrest warrant's issuance); *see also id.* art. 15.16 (Vernon 1977) (requiring "magistration" before magistrate who issued or is named in warrant, if in same county); *id.* art 15.17(a)-(d) (Vernon Supp.2000) (allowing "magistration" before any magistrate in county of arrest or bordering county, apparently for non-warrant arrests).

22. Tex. Const. art. V, § 12(b) (presentment of indictment or information vests court with jurisdiction of cause); *McBee v. State*, 981 S.W.2d 694, 697 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd) (attachment of jurisdiction in district court gives it power to determine all essential questions and do anything pertaining thereto that is authorized by Constitution, statute, or law).

23. Tex.Code Crim. P. Ann. art. 18.18(a) (Vernon Supp.2000).

24. *See id.* art. 18.18(b).

because none concerned whether a civil injunction could, at this stage, trump a valid order for the State to retain potential criminal evidence seized under a search warrant.

### b. Interference With a Criminal Investigation

■ There is another reason this TRO cannot stand.

> It is well settled that courts of equity will not interfere with the ordinary enforcement of a criminal statute unless the statute is unconstitutional and its enforcement will result in irreparable injury to vested property rights. The underlying reason for this rule is that the meaning and validity of a penal statute or ordinance should ordinarily be determined by courts exercising criminal jurisdiction.... A person may continue his activities until he is arrested and then procure his release by showing the law is void.

*Passel v. Fort Worth I.S.D.*, 440 S.W.2d 61, 63 (Tex.1969) (citations omitted). This has been construed to mean that, absent the stated exception, no court has jurisdiction in a civil suit to enjoin or restrict the enforcement of, or declare the constitutionality of, a penal statute. *See, e.g., State v. Morales*, 869 S.W.2d 941, 942 (Tex.1994); *Ferguson*, 125 S.W.2d at 275, 278.

This rule does not apply here directly, but it is close. *Compare, e.g., Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 894–96 (Tex.1970) (reversing judgment declaring that state board had misinterpreted penal statute and enjoining statute's enforcement); *Crouch v. Craik*, 369 S.W.2d 311, 315 (Tex. 1963) (orig.proceeding) (holding void an order enjoining further enforcement of penal statute that plaintiffs alleged they were not violating because it had been amended); *Ferguson*, 125 S.W.2d at 275, 278 (holding void the part of a TRO specifying the manner in which law enforcement officers were to enforce a penal statute because "a court of equity has no power to enjoin peace officers from enforcing a valid criminal statute on the ground that, under the facts as alleged ..., the parties arrested will have valid defenses."); *Letson v. Barnes*, 979 S.W.2d 414, 418 (Tex.App.— Amarillo 1998, pet. denied) (reversing order temporarily enjoining state officials from seizing, confiscating, or "forfeiting" property under alleged misinterpretation of penal statute, despite order's recitation that it did not "intend to, interfere with arrest and/or prosecution"); *Roberts v. Gossett*, 88 S.W.2d 507, 508 (Tex.Civ. App.—Amarillo 1935, no writ) (affirming trial judge's refusal to declare that State had misinterpreted penal gambling statute and to enjoin seizure of property and criminal prosecution under that misinterpretation).

■ Judge Hancock's TRO interferes with an on-going criminal investigation[25]

25. The Monetize parties argue there is no criminal proceeding to interfere with because no arrest has occurred, no one has been charged, and no indictment has been presented. *See* Tex. Const. art. V, § 12(b) (presentment of indictment or information vests court with jurisdiction of cause). *Cf. Howland v. State*, 990 S.W.2d 274, 277 (Tex.Crim.App. 1999) ("any criminal proceeding" in article 38.37 means any step occurring within prosecution process). We disagree. A search warrant is a criminal matter. *See Bloss v. State*, 127 Tex.Crim. 216, 75 S.W.2d 694, 695 (1934) ("When employed, a search warrant is one of the initial steps in a criminal proceeding.... [A] search warrant is criminal process. It is issued to aid in the detection or suppression of crime. Its employment in a criminal proceeding may be as important as a warrant of arrest, and in attaining one of the objects of the Code, that is, to bring to the investigation all of the evidence showing guilt, it may become more important in a given case than a warrant of arrest.") (citations omitted); *Letson*, 979 S.W.2d at 418 ("One cannot reasonably dispute that the ability to seize evidence of a crime is an integral part of enforcing this State's criminal laws."). Moreover, relators' investigation is criminal: the warrants authorized seizure of evidence of alleged crimes, and, while the Attorney General does not initiate criminal prosecutions, he may assist a grand jury if one is empaneled. *See* Tex.Code Crim. P. Ann. arts. 20.03–.05, 20.10 (Vernon 1977 & Supp.2000).

and counters the orders of four magistrates over evidence of alleged crimes in that investigation. As such, her order interferes with the enforcement of penal statutes. *Cf. Letson,* 979 S.W.2d at 418 ("Nonetheless, the latter individuals were expressly prohibited from seizing or confiscating evidence pertinent or necessary to such a prosecution.... One cannot reasonably dispute that the ability to seize evidence of a crime is an integral part of enforcing this State's criminal laws. Thus, we must conclude that the injunction issued below interfered with the ability of [these individuals] to enforce a penal statute.").

If the courts in *Crouch, Canyon Creek Land Corp., Roberts, Letson,* and *Ferguson* held injunctions void for interfering with criminal investigations or enforcement of criminal laws, then, by analogy, the TRO in this suit is also void. To hold otherwise would allow a collateral attack on a search warrant in a civil suit to interfere with the investigation of crime and the enforcement of penal laws. That is untenable.

### 3. Conclusion

We hold that only the magistrates who issued the article 18.10 safekeeping orders here had jurisdiction to order that property returned at this stage. The Monetize parties must seek the desired relief before those magistrates. Therefore, Judge Hancock's TRO, and all orders based on it, are void.

---

**26.** Because they were based on violation of a void TRO, the contempt orders are also void. *See Hansen v. Sullivan,* 886 S.W.2d 467, 469 (Tex.App.—Houston [1st Dist.] 1994, orig. proceeding) (holding void a sanctions order enforcing a void mediation order). While we may not issue mandamus for these orders, we are confident Judge Hancock will no longer pursue them. *Cf. Deramus,* 333 S.W.2d at 827, 831–32; *Ex parte Sealy,* 870 S.W.2d at 667. We are also confident Judge Hancock will not hold the temporary injunction hearing for the reasons set out in our opinion.

We conditionally grant the writ, which will issue only if Judge Hancock does not vacate the July 13, 2000 TRO and pending show-cause order.[26]

Justice COHEN, concurring. Justice NUCHIA joins Justice COHEN's concurring opinion.

MURRY B. COHEN, Justice, concurring.[1]

The facts of this case cry out for relief—for both parties.

It is intolerable for two courts with the same jurisdiction to exercise judicial power simultaneously over the same property, enter conflicting orders, and enforce them by contempt. It is also intolerable, under these facts, for a court exercising civil jurisdiction to interfere with a criminal investigation. Thus, the State must have the legal relief it seeks.

Despite that, the Monetize parties may well obtain from the warrant magistrates the equitable, discretionary relief that Judge Hancock found they deserved. Judge Hancock was obviously concerned, with good reason, that a presumptively legal enterprise should be put out of business by a search warrant without ever having been *accused,* much less convicted, of anything. At this stage, the Monetize parties do not need even a "presumption of innocence" because no grand jury or district attorney has claimed they are guilty. Despite this, the State insists it has the right to keep their property for three years—until the statutes of limitations for these suspected crimes expire—even

---

**1.** We take the unusual, but not unprecedented, step of concurring to our own opinion. *See Vargas v. State,* 838 S.W.2d 552, 557–58 (Tex.Crim.App.1992) (Benavides, J., concurring); *Bell v. State Dep't of Highways & Pub. Transp.,* 902 S.W.2d 197, 200 (Tex.App.—Houston [1st Dist.] 1995, no writ) (Cohen, J., concurring). Although two justices join this opinion, it does not constitute the panel's holding; that is found only in the opinion of the entire panel. The purpose of this concurring opinion is to encourage desireable growth in the law.

though the State may never even take its evidence to a grand jury.[2]

Judge Hancock crafted a wise order that carefully protected both the State's right to investigate crime and the Monetize parties' right to their property. She gave the State a reasonable time to copy what it needed and then return the property. If the State needed more time, she agreed to consider that. The State never asked for more time, and by now, it has had far more than Judge Hancock granted. Acting in their broad discretion, Judges Bacon, Beck, Kitzman, and Krocker may find this order a model to follow if, like Judge Hancock, they are persuaded by the evidence presented to them of the need for relief. Thus, it may be possible in this case to (1) preserve order within the judicial system, (2) respect property rights, and (3) grant appropriate scope to investigate suspected crime.

This is a case of first impression. Because we are writing on a clean slate, some guidance is appropriate. In our opinion, we state " ... that an order under articles 18.10 to 18.13 may be unappealable to a higher court. ..." As a general rule, the right to appeal interlocutory orders is statutory, and no statute authorizes an appeal from orders under articles 18.10–.13. Orders affecting property under those statutes resemble interlocutory orders in an *in rem* proceeding; they are not final judgments because the magistrate could change his mind and grant relief if a new request and different proof were presented.

Relief might be available by mandamus, however. It is well settled that mandamus will lie to protect a civil party from discovery of privileged materials or from production of discoverable materials under terms that are oppressive. *See Walker v. Packer*, 827 S.W.2d 833, 843–44 (Tex.1992).

The "discovery" the State has obtained in this criminal case may be comparable to those categories, especially the latter. If, as Judge Hancock found, the State can meet its legitimate needs by copying the materials, it could be an abuse of discretion to allow the State to hold that material indefinitely, while putting the owners out of business, all without the necessity of even an accusation by a grand jury or a prosecutor.[3] The standard of review for such a mandamus would be abuse of discretion. *Walker*, 827 S.W.2d at 839. Interestingly, that is the same standard of review by which Judge Hancock's temporary injunction would have been reviewed, if she had granted one. *See Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993). Thus, the magistrates undoubtedly have the power to grant the relief that Judge Hancock granted, and a court of appeals, on mandamus, might be able to afford a remedy.

To get relief from the magistrates, however, it appears that the Monetize parties may have to litigate the issue five times, in four district courts, located in three counties. That burden on the parties and the courts might be avoided, however, if the parties and the warrant magistrates agreed to try all the issues simultaneously before one magistrate (as occurred before Judge Hancock) and have the others be bound by the result. That would avoid much repetitive litigation. If the parties do not agree to that, but the magistrates do, it might be possible, in the interest of judicial economy, for them to adopt a joint order appointing one of them to serve for all of them in a capacity similar to that of a civil master in chancery (*see* Tex.R. Civ. P. 171) or a criminal law master, similar to the way trial judges (or their appointees) act as masters for the Court of Criminal

---

2. The State could hold the property for the limitations period even without ever presenting the case to a grand jury, or even if the grand jury refused to indict or adjourned without any action.

3. The Attorney General does not represent the State of Texas as a prosecutor. That power is vested in District Attorneys and County Attorneys. Tex.Code Crim. P. Ann. arts. 2.01, 2.02 (Vernon Supp.2000).

Appeals in post-conviction habeas corpus proceedings. *See* TEX.CODE CRIM. P. ANN. art. 11.07, § 3(d) (Vernon Supp.2000) (also allowing for appointment of private attorney or magistrate for this purpose). In this way, prompt, efficient relief may be made available, as it should be.